Marshall, Ch. J.,
 

 delivered the opinion of the court. — This action is
 
 brought to recover
 
 money, received by the defendants, for a ship sold by them as the assignees of Aquila Brown, a bankrupt: which ship is considered, in this cause, as having been liable to forfeiture, under the
 
 “
 
 act for registering and recording ships or vessels.” It is founded on the idea, that, at the time of sale, the ship was the property of the United States, in virtue of the act of forfeiture which had been committed, and of the proceedings of the United States in consequence of that act.
 

 It appears, that in 1801, Aquila Brown, jr., then carrying on trade in his own name, in Baltimore, obtained a register for the Anthony Mangin, as his sole property ; having first taken the oath which the law requires, to enable him to obtain such register. He afterwards became a bankrupt, and the Anthony Mangin passed, with his other effects, to his assignees, who sold her for the money now claimed by the United States. After *this r*o5o, sale, facts were discovered, inducing the opinion that a certain Har- L man Henry Hackman, a foreigner, was part-owner of the vessel, a circumstance within the knowledge of Aquila Brown ; and upon this ground, she-was seized and libelled in the court of admiralty. By the sentence of that court, the libel was adjudged not to be supported, and was dismissed. It is agreed, and is so stated in the reasoning of the judge, which accompanied his opinion, that this sentence was not intended to decide the question of forfeiture ; but was founded on the alienation of the vessel, before the forfeiture was claimed. Acquiescing in this decision, the United States brought the present action. At the trial, the judge instructed the jury, that this, action was not maintainable, although they should be of opinion, that the fact alleged in the oath, which was taken to obtain the register, was untrue, within the knowledge of the person taking the oath. To this instruction, an
 
 *210
 
 exception was taken ; and upon that, among other points, the cause comes into this court.
 

 The words of the act under which the right of the United States accrues are : “And in case any of the matters of fact in the said oath or affirmation alleged, which shall be within the knowledge of the party so swearing or affirming, shall not be true, there shall be a forfeiture of the shij> or vessel, together with her tackle, furniture' and apparel, in respect to which the same shall have been made, or of the value thereof, to be recovered, with costs of suit, of the person by whom such oath or affirmation shall have been made.”
 

 The question made at the bar is, whether, by virtue of this act, the absolute property in the ship or vessel vests in the United States, either in fact or in contemplation of law, on the taking of the false oath ; or remains in the owners, until the United States shall perform some act, manifesting their election to take the ship and not the value. So far as respects this question, the effect of the sentence in the court of admiralty is put out of thecase, for the court has not decided what the effect of that sentence will be.
 

 It has been proved, that in all forfeitures accruing at common law, nothing vests in the government, until *some legal step shall be taken for -
 
 [1]
 
 the assertion of its right, after which, for many purposes, the doctrine of relation carries back the title to the commission of the offence ; but the distinction taken by the counsel for the United States, between forfeitures at common law, and those accruing under a statute, is certainly a sound one. Where a forfeiture is given by a statute, the rules of the common law may be dispensed with, and the thing forfeited may either vest immediately, or on the performance of some particular act, as shall be the will of the legislature. This must depend upon the construction of the statute.
 

 The cases cited from 5 Mod. and 5 Term Reports, are certainly strong cases. Whether they can be reconciled to the general principles of English law, need not be considered, because the present inquiry respects the construction of an act of congress, containing words which vary essentially from those used in the acts of the British parliament, on which those decisions were made. The question, therefore, does the ship vest absolutely in the United States, so as to make it their property, whether such be the choice of the government or not, or may they elect to reject the ship and proceed for its value ? must be decided by the particular words of the act.
 

 The words, taken according to their natural import, certainly indicate, that an alternative is presented to the United States. “ There shall be a forfeiture of the ship, or of the value thereof, to be recovered, with costs of suit, of the person by whom such oath shall have been made.” Had a special action on the case been brought against the person, by whom the oath was made, stating circumstances on which a forfeiture would arise, and averring an election on the part of the United States to claim the value, it would be a very bold use of the power of construction which is placed in a court of justice, to say, that such an action could not be maintained, because the vessel itself was vested in the government, and the value was only given, in the event of the vessel being withdrawn from its grasp.
 

 *In addition to the obvious and natural import of the words used by the legislature, the opinion that an alternative is given to the
 
 *211
 
 government, derives some strength from the consideration, that the forfeitures are claimed from distinct persons. If the ship be forfeited, she is claimed from all the owners. In an action for the Anthony Mangin, Harman Henry Hackman could not have defended himself, by averring hn interest in the vessel, and that only the share of Brown was forfeited ; but in an action against Hackman, for the value, the declaration, or information, must have averred that he was the person who took the false oath, and proof that it was taken by his partner, would not have supported that averment. They are, then, distinct forfeitures, claimed from different persons. The ship, from the owners ; the value, from the particular owner who has taken the false oath. The United States are entitled to both, or to only one of them. A right to both has not, and certainly cannot, be asserted. If there be a right only to one, the government may elect to take either, but until the election be made, the title to the one is perfectly equal to the title to the other.
 

 It seems to be of the very nature of a right to elect one of two thingR, that actual ownership is not acquired in either, until it be elected ; and if the penalty of an offence be not the positive forfeiture of a particular thing, but one of two things, at the choice of the person claiming the forfeiture, it would seem to be altering, materially, the situation in which that person is placed, to say, that either is vested in him, before he makes that choice. If both are vested in him, it is not an election which to take, but which to reject ; it is not a forfeiture of one of two things, but a forfeiture of two things, of which one only can be retained. That the legislature may pass such an act is certain ; but that the one under consideration is such an act, is not admitted by the court.
 

 If the property in the vessel was actually vested in the United States, by the commission of the offence, then the judgment of a court, condemning the vessel, *or declaring it to belong to the government, would, in [*353 fact, do nothing more than ascertain that the offence had been committed ; it would not vest the thing more completely in the government, in point of right, than it was vested by the commission of the offence. If, notwithstanding the complete ownership of the vessel, which the argument supposes in the government, immediately upon the act of forfeiture, and in virtue of that act, a suit for the value might have been maintained, it would seem to follow, that a judgment, declaring the vessel to be the property of the United States, would not bar an action for the value, provided the benefit of that judgment had not been received by the United States. The real principle on which an action for the value can be maintained, would seem to be, that the ship itself did not belong to the United States in consequence of the false oath, but in consequence of the election to take the ship. If this election be not made, and the government shall elect the value, then the property of the vessel remains in the original owners, and is no obstacle to a suit for the value. But if this opinion be mistaken ; if the property in the ship be immediately vested in the government, notwithstanding which the value may be claimed, the court cannot distinctly perceive why the same action might not be maintained, notwithstanding the declaration of a court that the property was in the United States, provided the benefit of their judgment was not obtained. In this view of the case, if the court of admiralty had decreed in favor of the United States, and the Anthony Mangin
 
 *212
 
 had been destroyed, before the benefit of that judgment had been received the person who had taken the false oath might still have been sued for the value. This would never be contended; and yet, if the absolute ownership of the vessel by the United States does not preclude a right to sue for the value, before a judgment be rendered, there is some difficulty in discerning when it will preclude that right. In fact, the idea that one of two things is actually vested in government, by an act to which forfeiture is attached, seems incompatible with the idea of a right to elect which of two things shall vest.
 

 It seems, then, to be the necessary construction of the act of congress ,,,,1 that the United States acquired no *property in the Anthony Man-
 
 ^
 
 gin, until they elected to pursue that part of the alternative given by the statute. Of consequence, the money for which that vessel was sold, was not, at the time, received for the use of the United States; but for the use of the creditors of the bankrupt.
 

 To decide finally on the propriety of supporting the claim of the United States, as made in this action, under that branch of the statute which forfeits the vessel, another question still remains to be investigated. Has the doctrine of relation such an influence upon this case, that an election, subsequent to the sale, shall carry back the title of the United States to the commission of the act of forfeiture, so as, by this fiction of law, to make them the real owners of the vessel at the time of sale, and consequently, of the money for which she was sold ?
 

 Without a critical examination of the doctrine of relation, it would seem to be a necessary part of that doctrine, that the title to a thing, which is to relate back to some former time, must exist against the thing itself, not against some other thing which the claimant may wish to consider as its substitute. To carry back the title to the Anthony Mangin to the act of forfeiture, the title to the Anthony Mangin must have an actual existence. If no such title exists, then the right to elect the vessel is lost, and the statute has not forfeited the money for which she was sold in lieu of her. Suppose, instead of being sold by the defendants, she had been exchanged by Aquila Brown himself for another ship, would that other ship have been forfeitable, by the doctrine of relation, in lieu of the Anthony Mangin? Clearly not; for the statute gives no such forfeiture. The forfeiture attaches to the thing itself, not to any article for which the thing may be exchanged.
 

 The court will not inquire whether an action on the case, against Grundy & Thornburgh, for money had and received to the use of the United States, be a proper action in which to establish a forfeiture for a fact committed by Aquila Brown. But some objections to it may be stated, which deserve consideration. It certainly gives no notice of the nature of the claim, a circumstance *with which, in a case like this, the ordinary rules of jus-
 
 [1]
 
 tice ought not to dispense. It asserts a claim, founded on a crime yet remaining to be proved, not against the person who has committed that crime, or against him who possesses the thing which is liable for it, but against those who, though the assignees of the effects, are not the assignees of the
 
 torts
 
 committed by the bankrupt. It may change the nature of the defence. The court suggests these difficulties, as probably constituting objections to the action, without deciding on them. The points previously
 
 *213
 
 determined show that it is not maintainable in this case, under that alternative of' the statute which subjects the vessel to forfeiture.
 

 It remains to be inquired, whether it can be maintained under the provision which gives a right to sue for the value. Upon this part of the case, no doubt was ever entertained. Not only must the declaration specially set forth the facts on which the right of the United States accrued, and the law which gives their title, but the action must be brought against the person who has committed the offence. Discarding those words which relate to other objects, and reading those only on which the claim to the value is founded, the statute enacts, that “ in case any of the matters of fact in the said oath alleged which shall be within the knowledge of the party so swearing, shall not be true, there shall be a forfeiture of the value of the vessel, in respect to which the same shall have been made, to be recovered, with costs of suit, of the person by whom such oath shall have been made.” It certainly requires no commentary on these words, to prove that an action for the value can only be supported against the person who has taken the oath.
 

 It being the opinion of the court that this action is not maintainable, under any proof offered by the plaintiffs, it was deemed unnecessary to inquire whether the other exceptions in the record be well or ill founded.
 

 * Without declaring any opinion respecting them, the judgment of the circuit court is affirmed. L
 

 Judgment affirmed.
 
 (a)
 

 (a)
 

 The opinion of Judge Winchester, in the case of United States
 
 v.
 
 The Anthony Mangin, Norman, claimant, referred to in the argument, was as follows:
 
 [1]
 

 The libel is grounded on the statute for enrolling and registering ships and vessels. The proceedings being
 
 in rem,
 
 all the world become parties to the sentence, so far as the right of property is involved; and of course, all persons any wise interested in the property in question are admissible to claim and defend their interests.
 

 The libel states the cause of action, with all the averments necessary to support the affirmative allegation, that a forfeiture has accrued. The only claimant intervening in this cause, is T. W. Norman, who alleges himself to he a purchaser
 
 bond fide,
 
 for a valuable consideration, ignorant of any cause of forfeiture existing at the time of the purchase; and under such purchase,
 
 i.
 
 e.,
 
 bond fide,
 
 and for valuable consideration, claiming the ‘property as exonerated from the cause of forfeiture alleged, even if the facts stated to sustain the same be true, which he in no wise admits.
 

 On these proceedings, several questions of law have been raised and argued by the counsel; and as the great point in the cause does not appear to have ever received, either in this country or Great Britain, any direct judicial determination, I have, with great diligence, examined into the questions, which, from the breaking the cause, I saw must necessarily be involved in the determination. The opinion which I am now to give, though the result of more than usual investigation, is delivered with the diffidence which will ever attend the determination of an inferior court, upon a new, great and important legal question, and which will probably receive, as it ought, the ultimate judgment of the supreme court.
 

 It is necessary to keep in different views, the questions of fact in issue, the questions of law arising from those facts, and the parties between whom they arise. It is to be distinctly remembered, that A. Brown, whose wilful perjury is alleged to sustain the forfeiture sued for, is no party to this suit; neither are his assignees, in any shape, parties to this suit, to be directly affected by the judgment. Every consideration,
 
 *214
 
 therefore, which would support a prosecution against the actual offender, to recover the penalty of his wilful crime, or which might be alleged against those who stand in his situation, as privies in law
 
 quoad
 
 the forfeiture, must be laid out of the case. The only parties to- this case are, the United States and the informant, as libellants, and T. W. Norman, as claimant of the ship.
 

 
 *213
 
 1 2 Pet. Adm. 482.
 

 
 *214
 
 I think it peculiarly necessary to confine my opinion to the state of facts, and the questions of law applying to the parties in court, because it is not necessary for me to decide, whether the assignees of A. Brown are clothed with any of the essential characters of a fair purchaser, or have, so far as relates to the property, any privilege or exemption which Brown himself would not have had ; and the question
 
 de bond fide emp
 
 toris, does arise directly upon Captain Norman’s claim, and will determine this case. To that I shall, therefore, immediately proceed.
 

 No seizure was made, nor libel filed against the ship, until after Brown’s bankruptcy, and a sale by his assignees to the claimant, who is admitted to be an innocent purchaser for a valuable consideration; nor until after he had obtained a new register, in his own name, upon that purchase. It is argued by the libellant’s counsel, that Brown was not competent to pass any property to his assignees, nor they, to any purchaser under them, as the forfeiture relates back to vest the property from the time of the false oath, and that the claim of the libellants is paramount to that of the claimant The defendant’s counsel argue, in support of his claim, that the relation back to the time of the offence is never admitted, to overreach rights intermediately acquired by third persons.
 

 In commenting upon the case from 1 T. R. 252, when the argument was first opened, Mr. Martin pressed very strongly the
 
 dictum
 
 of Lord Kenyon, that if the relation back to the time of an offence was admitted, as to the property, it would, in every case, equally relate to the profits intermediately acquired. If the reason assigned was true, it certainly furnished one of the strongest cases for applying the argument
 
 ab in
 
 corwenienti, and as such I was forcibly struck with it, when mentioned. The manner in which Lord.Kenyon is reported to have made this observation, plainly shows it to be the declaration of a sudden impression, and which, though correct as applied to some special cases, is not so in the latitude reported, either at common law, the civil law, or in equity, supported by policy.
 

 1. At common law, even as to the guilty party, no attainder whatsoever has relation, as to the mesne profits of land, but only from the time of the attainder. 3 Bac. 272; Co. Litt. 290 5, 118
 
 a.
 

 2. By the civil law, and the rules of equity adopted from that code, a subsequent possessor is not only not in a worse situation than those from whom he derives his possession, but even in cases where the original possessor might be bound to restore profit, a
 
 bond fide
 
 possessor is exempt from any such obligation ; as in the case of a
 
 bond fide
 
 purchaser.
 
 Bond fide empior non dubie percipiendo fiructus ePiam ex re
 
 aliena,
 
 interim suos fiacait, non ta/ntum cos qui diUgentia et opera ejus
 
 proveniunt,
 
 sed omnes; quia quod ad fiructus attinet loco domiwi est.
 
 Zouch, Q. J. C. 213.
 

 3. It would not be equitable or just, in the abstract, to permit a legal owner to lie by, to avail himself of the ignorance of an innocent holder. And the same considerations of policy, which, in England, permit the offender and his family to enjoy the profits of lands forfeited for treason, which is a strong and acknowledged case of relation to the offence, lest the land should be uncultivated, and the public interest thereby suffer, applies conclusively to every case where it may be doubtful whether the relation is to the offence, or only to the time of conviction.
 

 As this reason against relation does not appear to have the force it carried at first view, we must have recourse, 1st. To the principles of decision in analogous cases ; in their application, always having regard (as was justly argued by Mr. Harper, on the motion to produce Brown’s examination before the commissioners) “ that a relation back shall never be admitted to injure the rights of third persons, nor to protect or fav- or wrong.” And, 2d. To the statute under which the forfeiture is claimed in this case.
 

 The adjudged cases on this subject, are six classes of offences, which incur a forfeit
 
 *215
 
 ure of real estate (2 Bl. Com. 267); and seventeen which produce a forfeiture of personal property (Ibid. 421). In this numerous classification, the principle which governs each description of cases does not materially differ. I have, therefore, selected only, 1st. The cases of outlawry, and attainder of crimes; and (as illustrative of these cases) 2d. Waived goods; 3d. Relation of executions at common law, and since the statute of Charles; and 4th (as involving the general doctrine of this case, and to explain the case of
 
 Roberts
 
 v.
 
 Withered,
 
 cited by Mr. Harper, from 5 Mod. 193; Salk. 223), a case of villeinage which governed that decision.
 

 1. Attainder, or conviction of crimes and outlawry. Of this description, there are two classes, which are adjudged to have relation to the time of the offence committed, and overreach all intermediate alienations, treason and
 
 felo de se.
 
 The case of treason, in which the forfeiture as to land relates to the time of the offence committed, depends upon feudal principles. As the land could not be aliened by the tenant, voluntarily, it would be preposterous to admit that to be done, through the medium of a crime, which could not be done by a lawful act; and the power to sell, introduced by subsequent statutes, is construed as applying only to lawful alienations. The reason assigned in some books, that it shall relate to the offence, “because the indictment contains the year and day when it was done,” is by no means true or satisfactory, since that would apply equally to personal property, which, the same books admit, is only affected from the time of the conviction ; and the time charged is traversable, even in the case of land, by third persons claiming an interest therein. 5 Bac. Abr. 228; Hale H. P. C. 261, 262; 3 Bac. Abr. 271; Plowd. 488; 8 Co. 170; Hale H. P. C. 264, 270; 3 Inst. 230. It is a proposition universally true, that the forfeiture, upon an attainder of treason, relates but to the conviction, as to chattels, unless the case of the offender killed in resisting, or flight, form an exemption, which may well be doubted. Indeed, says Lord Coke, it hath always been holden, that any one indicted of treason or felony, may
 
 bond fide
 
 sell any of his chattels, real or personal. 3 Bac. Abr. 271; Perk. 29 ; 8 Co. 171;
 
 Jones
 
 v.
 
 Ashurst,
 
 Skin. 357; 4 Com. Dig. Forfeiture, B. 4; 2 Inst. 48.
 

 In the case of a
 
 felo de se,
 
 it is stated, that the forfeiture has relation to the time of the mortal wound given, so that all intermediate alienations are avoided. 8 Bac. Abr. 272. This is the only case I have ever discovered, in which the doctrine of relation has been so far extended. If the principle of that determination is sound, and it is applicable to other cases, it is a drag-net indeed. It may, perhaps, most correctly be considered as a case
 
 sui generis,
 
 and neither for the reasons which are assigned to maintain it, nor the doctrine it supports, applicable to other cases. Those who are curious on this subject, will be amused with the argument of Chief Justice Dyer, on the drowning of Sir J. Hales, and will, probably, be as much convinced by the reasoning of the Chief Justice, as by the logic of the grave-digger in Hamlet, to prove that the drowning of Ophelia was
 
 se defendendo.
 
 Plowd. 262.
 

 Outlawry subjects the party to forfeitures, which are well known to depend upon the nature of the suit on which they are prosecuted. Without inquiring when an office is necessary, or may be dispensed with by the crown, I shall mention one case, where, even after an outlawry (of which purchasers might always have notice, as it is a matter of record), a fair purchaser was protected, even against the crown. It is from Hardres 101,
 
 Attorney-Generals. Freeman.
 
 A. was outlawed, and afterwards made a lease of his lands, and afterwards these lands, among others, were found by inquisition ; and this case was pleaded in bar, to bind the king before the inquisition. The court held, that a lease, or other estate made by the party, after outlawry, and before an inquisition taken, will prevent the king’s title, if it be made
 
 bond fide,
 
 and upon good consideration; but if it be in trust for the party only, it will not be a bar; but that no conveyance whatsoever, made after the inquisition, will take away or discharge the king’s title. 5 Bac. Abr. 564; Salk. 395; Carth. 442.
 

 These cases are strong to show the general protection afforded by law to fair purchasers, even where the forfeiture is
 
 in rem,
 
 and the offender is not actually divested of his possession, the necessity of which is directly affirmed in the second description of cases to which I have referred, viz:
 

 
 *216
 
 3. Waived goods. “ As to waived goods, these belong to the king, and are in him without any office, for the property is in nobody. They may belong in like manner to the lord of the manor, by grant, but not by prescription.” 5 Bac. Abr. 517 ; 5 Co. 109. The general principle of these cases is conformable to that quoted by Mr. Harper from 13 Mod. 93, to show that an offence like that charged against Brown, divested the property out of him, and left it, as it were, in abeyance, until suit, which vested the property, by relation, from the act of forfeiture. A position of greater comprehension, or which, as a general one, should embrace the libellant’s case, could scarcely be imagined. Waived goods are in the king, without office; that is, even without seizure, the purpose of which, as to legal title to the king, is answered by the office; the property is, as it were, in abeyance; yet this case, so completely applicable in its general principles, contains the strongest possible illustration of the doctrine, that a title by forfeiture, in the case of a personal chattel, begins from suit, seizure or conviction, and has no relation back; for “ the owner may at any time retake the goods waived, if they are not seized by the king, or the lord of the manor; for the lord’s property begins from the seizure.” 5 Bac. Abr. 517; Kitchen 82. This case is conclusive against Mr. Hollingsworth’s argument, that this question is a question of property only, since it proves that property only begins from the seizure, which cannot be lawfully made to affect an intermediately vested right of a third person.
 

 3. The relation of executions at common law, and since the statute; considering this case as one between the government and the claimant, from analogy to cases of the king’s precedency in execution. By the statute of 33 Hen. VIII., c. 9, it is enacted, that if any suit be commenced or taken, or any process awarded for the recovery of any of the king’s debts, then the same suit or process shall be preferred before any person or persons. And as to the king’s execution of goods, the same relates to the time of awarding thereof, which is the
 
 teste
 
 of the writ; as it was in the case of a common person at common law. 3 Bac. Abr. 734.
 

 Now, to apply this doctrine to the case before the court, and even admitting to this libel the same extent of relation as is admitted at common law upon the king’s execution against personal chattels, and as to real and personal by the above recited statute, will it overreach the sale to Oaptain Norman ? It is generally agreed, that an ■execution executed, though posterior to the time to which the king’s extent relates, bars the king’s priority; and in the case of Lechmere t. Thorowgood, 3 Mod. 336, •Comb. 133, it was holden, that if the king’s extent be sued out posterior to a judgment recovered by the subject, and -writ of execution thereon delivered to the sheriff; though not executed, the king shall be postponed, for the property of the goods is changed by the subject’s execution. Here, then, we advance one step farther in restricting the doctrine of relation, as it applies to individual interests. It is presumed, that the principles of relation upon executions, since the statute, are too familiar to require any reference to adjudged cases.
 

 The case of
 
 Roberts
 
 v. Withered, as reported by Salkeld, and copied by Bacon, is in these words: “By the act of navigation, 12 Car. II, c. 18, certain goods are prohibited to be imported here, under pain of forfeiting them, one part to the king, another to him or them that will inform, seize or sue for the same.” It was adjudged, that, in this case, the subject may bring detinue for such goods; as the lord may have replevin for the goods of his villein distrained ; for the bringing of the action vests a property in the plaintiff. When this case was first referred to by Mr. Harper, I considered, as I believe he and the other counsel did, that it came nearer to the case before the court than any which occurred in their researches. On a careful examination of that case, I now think, it will be found not to bear on the point now to be decided. In the first place, it may be observed, that the case, as reported, does not afford any ground to presume, that any other person than he who unlawfully imported the goods was interested in that suit; but on the contrary, it is presumable, that it was a suit against the original importer. In that case, the question of relation could not have arisen, since it was utterly unimportant to the plaintiff and to the defendant, whether the plaintiff recovered by a title which related to his writ, or to the time of the importation. And further, it is
 
 *217
 
 to be remarked, that the question in that case, seems to have been only upon the form of action. It was detinue, which is founded on property; and all that that case decides is, that in a case of specific forfeiture, the bringing of a suit vests a property in the plaintiff, sufficient to sustain that form of action; for the case to which it is likened, and on which the decision rests, is express, to show it does not relate to the interests of others; for, says the book, “ in this case the subject may bring detinue for such goods; as the lord may have replevin for the goods of his villein,” which case, as I will show, goes not only to the form of action, but to the full length of this case. I will read that case. (
 
 Vide
 
 Littleton, § 177, with Lord Coke’s comment thereon). So, in this case, the ship was liable to forfeiture, and might have been specifically recovered from Brown, by the government, or any prosecutor under its laws, before a
 
 bond fide
 
 alienation by him; but if they have waited until such alienation by him, and a third person has honestly bought and paid for the property, they may be answered in the language of Littleton, “that it shall be adjudged their folly, that they did not enter, when the offender was in possession;” for, according to Lord Coke, before such seizure, they had neither
 
 jus in re,
 
 nor
 
 jus adrem,
 
 but only a right to sue, which I understood to be Lord Coke’s possibility above referred to.
 

 ' Prom all these cases and principles, I infer, that the relation of the forfeiture to the time of the offence, in cases of treason and felony, especially by self-murder, is peculiar to those cases ; that in case of forfeiture of chattels, the relation is only to the time of conviction ; that the forfeiture to which a party is subjected, by statute, of a personal chattel, must be construed with relation to the continuance of his ownership in that chattel, at the time of conviction, and cannot be prosecuted
 
 in rem,
 
 to affect a
 
 bond fide
 
 purchaser for a valuable consideration; and this construction, I think not only warranted by the statute on which this suit is founded, and which speaks of a recovery of the value of the ship, but also by sound legal principles. The value can only be recovered against the actual offender, and never from a
 
 bond fide
 
 holder; for against the offender, it is the value at the time of the offence; even against a
 
 maid fide
 
 holder, it is only of the thing, be the value of that thing greater or less. If any holder
 
 bond fide
 
 was liable, because of his possession, he would not be the less so, after he had parted with his possession; but he might be made answerable for the value of the thing, in the same manner as if the possession continue with him; but even where he was not strictly a
 
 bond fide
 
 holder, the remedy is lost, if his possession is gone. And it is but just, when two remedies are given to punish an offence, one of which shows the plain intent of the legislature, that it shall foilow the offender, personally, or in his personal interests, so to construe the other remedies as not to permit them to be extended to involve others who are wholly innocent, in the same degree of punishment as would attach to the responsible offender.
 

 The argument, that Brown, by his false swearing, subjected the ship to forfeiture
 
 defacto,
 
 and that no alienation by him could vest a better title in the vendee than the vendor possessed; and that as he held the ship subject to forfeiture, so any holder under him, or through him, must take subject to that forfeiture, is certainly a strong one. The general principle is undoubtedly true, that a derivative title cannot be better than the original from which it is derived; but it is only true, as a general principle; and the exceptions to its operation are those on which I rely to warrant my construction of the statute in providing for a recovery of the value of the ship, as well as to show that, in some instances, he who has no title at all may yet transfer a valid one to personal chattels. Bobbery can give no title to goods, and upon conviction, there is a judgment of restitution, according to the statute, which fixes the remedy against any person in possession at the time of the conviction; and this is by the express provision of positive law. Yet, the owner of goods stolen, who has prosecuted the thief to conviction, cannot recover the value of his goods from a person who has purchased and sold them again, even with notice of the theft, before conviction. And if the owner of goods loses them, by a fraud, and not a felony, and afterwards convicts the offender, he is not entitled to restitution, or to retain them against a person,
 
 e. g.,
 
 a pawnbroker, who has fairly acquired a new right of property in them. If, therefore, he who hath
 
 *218
 
 no title at all, may in some cases, nevertheless, give a legal right,
 
 d fortiori,
 
 he who holds by a title defeasible only within a limited time (for by the statute of limitation, the prosecution, in cases like the present, must be within three years) may transfer a good title to a fair purchaser for a valuable consideration. The language of Blackstone is very emphatic: “the right of proprietors of personal chattels is preserved from being divested, only so far as is consistent with that other necessary policy, that purchasers,
 
 bond, fide,
 
 in a fair, open and regular manner, should not be afterwards put to difficulties, by reason of the previous knavery of the seller.”
 

 The statute provides, that in case of a wilful false oath, in any of the matters required, previous to the obtaining of the registry, “there shall be a forfeiture of the ship or vessel, together with her tackle, apparel and furniture, in respect to which the same shall have been made, or the value thereof to be recovered,” &e. It seems to me, to be the plain and just construction of this statute, that the wilful false swearing does not
 
 ex dweeto
 
 produce a forfeiture of the ship. The forfeiture is alternative, either of the ship, or the value of the ship, at the election of the government or persons suing; but not of both the ship and the value. If the government had recovered the value from Brown, there would have been an end of proceeding against the ship. And if the offence charged against Brown only produces a specific forfeiture by a subsequent election, the argument is cogent, that the relation consequent upon that election, should be restricted by the general rule, that it shall not overreach an antecedent equity ; and conclusive, that Brown’s title was not forfeited
 
 de facto,
 
 but forfeitable only, and therefore, within the principles of the cases of villeinage and waived goods, before relied on by me, and expressly by Blackstone. 2 Com. 421.
 

 Further, the forfeiture is of the ship, or the value. I have construed this clause somewhat differently from all the counsel, and though this circumstance produces doubts of its correctness, yet, as it has weighed with me, and minds of less comprehension may sometimes embrace truths which may escape superior understandings, I think it my duty to mention it. It is this. That the ship is not liable to forfeiture in the hands of any holder, other than the persons false swearing, in any case but where such holder would be liable to a suit for the value. The words, that there shall be a forfeiture of the ship, &c., or of the value thereof, to be recovered, with the costs of suit, of the person by whom such oath or affirmation shall have been made, plainly show the intent of the legislature, that the penalty and punishment should attach to the offender only. “ To be recovered of the person,” both grammatically and legally, relate to the object to be recovered, to wit, the ship, or the value thereof ; and to the person from whom, and from whom only, the one or the other is to be recovered. The guilt of false swearing forfeits only such interests as the offender possessed; for, by the express provision of the 16th section of this statute, the rights of an innocent and unoffending owner are exempt from forfeiture; and the words of the statute, which connect the recovery with the forfeiture, in this case, exclude the idea of any recovery from an innocent holder.
 
 Expressio unius est exalmio alterius.
 

 If the ship is forfeited by the sole act of the false swearing, then she is equally forfeited, notwithstanding there may have been fifty fair transfers, in public market. Every particular sale would be a particular conversion, and every one through whose hands she may have passed might be sued for the value of the price ; but the statute says, that the value shall only be recovered of the offender himself. A party having fairly obtained and fairly lost or departed with his possesion, would not, in such case, be liablefor the thing, or its value. 3 Com. Dig. 359; 2 T. R. 750. If not liable, when his possession has honestly ceased, neither can he be made so, when it honestly continues, since his own act cannot vary his responsibility.
 

 Does reason or policy require a different construction ? The government prohibits an act, under a penalty against the party offending. They say, we, for this, forfeit the thing in respect to which you have sworn falsely, if it continues in existence, and is yours; but if lost, or destroyed, or other persons innocently acquire new rights in that thing, your guilt shall still be punished; if annihilated, if sold, pay the value; if you have fraudulently impaired the thing, pay the value. The one or the other shall be re
 
 *219
 
 covered of you, of you, the guilty party. But this prohibition contains no threat of punishment against an innocent holder. No inconvenience arises from this construction. A purchaser can only look to the face of the documents, to the records of title which the law requires for this species of property. The knowledge of the oause of forfeiture rests generally in the bosom of the offender ; and the law can never require of a purchaser to examine into the secrets of the heart. It is more the interest and policy of government, to increase its wealth and strength, by the employment of its ships in trade and commerce, than to augment its revenues by forfeitures. It, therefore, wisely protects the interests of fair shipholders from forfeiture for the crimes of others, while it carefully provides for the punishment of fraudulent contraventions of its laws. Protection is not, by this construction, afforded to guilt or fraud; it is only a shield for innocence. The remedy remains, as it ought, against him who committed the offence. Government cannot be deprived of its forfeiture, by any fraudulent alienation. Such a sale would be void.
 
 Jones
 
 v. Ashurst, Skin. 357;
 
 Twyne's Case,
 
 3 Co. 81; 2 Bl. Com. 421.
 

 The possession is, legally, and to effectuate the statutory provision, still in the vendor. Indeed, all the reasoning on this subject is contained in two axioms of the civil law, to which this court lmay he allowed to refer.
 
 In rem, actione tenetur qui dolo desiit possidere.
 
 Zouch, Elem. 197.
 
 St aliquando, qui fieri non debet, factum valet; firmum et probum quodsit bond fide, improbatur cmtem quod sit maid fide vel dolo.
 
 Ibid. 41. If a contrary construction prevails, government may have greater security for a few specific penalties; but it is at the expense of the interests of commerce, and the security of all shipholders.
 

 I do, therefore, order and decree, that the libel in this case filed shall stand dismissed, and that the ship, &e., he restored to the claimant. But as the case involved questions of great difficulty, upon which eminent counsel have differed in opinion, and judges may differ, and it was proper, in every view of the case, to put those questions in a course of legal adjudication, I shall certify probable cause of seizure, and decree restitution, without costs.