16 U.S. 277 (____)
3 Wheat. 277
The NEPTUNE: HARROD et al., Claimants.
Supreme Court of United States.

February 26th, 1818. This cause was argued by D.B. Ogden and C.J. Ingersoll, for the appellants and claimants, and by the Attorney-General, for the United States.
*DUVALL, Justice, delivered the opinion of the court. [*602
The ship Neptune, owned and commanded by Captain Myrick, arrived at New Orleans, from London, on the 20th of October 1815. On the next day, he appeared, in company with George M. Ogden, one of the appellants, at the custom-house, and reported the Neptune, as a registered vessel of the United States, belonging to Wilmington, North Carolina, where, he alleged, and it was so stated in the manifest, she was registered. He declared, at the same time, that he had lost the register, in ascending the Mississippi, and required a new one to be issued in lieu of it. Captain Myrick had made a protest before a notary-public to that effect, and offered to take the oath required by the 13th section of the act, entitled "an act concerning the registering and recording of ships or vessels," but was taken sick, and in a few days afterwards, died, without taking it.
George M. Ogden, administered on the estate of Captain Myrick, and on the 22d of November, the court of probates ordered a sale of the effects of the intestate, which was made on the 5th of December following, at which sale, Messrs. Harrod & Ogdens became the purchasers of the Neptune, for $7500.
On the 12th of January 1816, Messrs. Harrod & Ogdens addressed a letter to the collector, requesting to be informed, whether a register could be granted for the ship Neptune, on the owners taking the oath prescribed by law. The collector replied, by letter dated the 20th, that a register had been refused the ship Neptune, on the ground, that the oath offered to *show [*603 the loss of a former register was insufficient, inasmuch as it contained an assertion that the register lost was granted at the port of Wilmington, in North Carolina, and by a letter from the collector of that port, information had been received, that no such register was ever issued from his *278 office. The collector was afterwards examined as a witness in the cause, and declared on oath, to the same effect.
George M. Ogden, one of the owners, afterwards applied to the collector's office for a register, offering to take an oath, the form of which he had prepared, varying from the form of the oath required by law; he was informed by the collector, it was not sufficient, and that unless he would take the oath in the form prescribed by the registry act, a register could not be granted. Mr. Ogden pressed the form of the oath which he had tendered, but was again told, it could not be received. Mr. Ogden had been shown the letter from the collector at Wilmington, and had been informed of its contents, by the attorney for the district. Nevertheless, he appeared in the collector's office on the 22d of January 1816, and took the oath required by law, relying, as he said, on the oath which Captain Myrick had taken, as the ground of his oath; and a register issued in form to the owners, Richare Peniston, master. In this oath, he deposed, that "being owner in part and having in charge of the ship or vessel called the Neptune, the said ship or vessel had been, as he verily believed, registered according to law by the name of Neptune, and that a certificate thereof was granted by the collector *604] of the district of Wilmington, in the state of *North Carolina, which certificate had been lost and destroyed, by accidentally falling overboard in the river Mississippi."
On the part of the owners, John McCauley, mate of the Neptune, deposed, that on her voyage from London to New Orleans, he had seen the register of the ship Neptune, frequently, and before the issuing of the new register, he had assured Mr. Ogden he had seen it, and that he believed it to be dated, at Wilmington, North Carolina, and that it was lost, by accident, from the pocket of the master in the river Mississippi; and that he had no reason to doubt it a genuine one. McCauley, being asked, "Did Captain Myrick tell you, on his return from town, that he had shown the register to Messrs. Harrod & Ogdens?" answered, he said, he had laid the pocket-book containing it on the desk. The carpenters, who repaired the Neptune, certified that, in their opinion, she was built in the United States.
The Neptune cleared out at the custom-house of New Orleans, on the 9th day of February 1816, when she was immediately seized by the collector, as forfeited to the United States, and libelled for a breach of the 27th section of the act of congress of the 31st of December, 1792, ch. 146, entitled, "an act concerning the registering and recording of ships or vessels." Upon these facts, the Neptune, together with her tackle, apparel and furniture, was, by the sentence of the district court, condemned as forfeited to the United States. From this decree, the owners appealed to this court.
*605] *The question for the decision of this court must depend upon the true construction of the act before mentioned. If the appellants have, in all respects, complied with the requisites of that act, they have incurred no forfeiture; if any of its provisions, which inflict a forfeiture of the vessel for a non-compliance, have been violated, a forfeiture will ensue.
By the first section of the act, it is provided, that ships or vessels of the United States shall not continue to enjoy the benefits and privileges appertaining to such ships or vessels, longer than they shall continue to be wholly owned, and be commanded by a citizen or citizens of the United States. The third section directs, that all vessels, thereafter to be registered, shall *279 be registered by the collector of the district, in which shall be comprehended the port to which the ship or vessel shall belong, at the time of her registry; which port shall be deemed to be that at or nearest to which the owner, if there be but one, or if more than one, the husband, or acting and managing owner, of such ship or vessel usually resides; and the name of the vessel, and of the port to which she belongs, shall be painted on her stern. The fourth section prescribes the substance of the oath to be taken, in order to the registry, and contains a clause of forfeiture, in case of any of the matters of fact, which shall be within the knowledge of the party swearing, shall not be true. The fifth section makes it the duty of all the owners, resident within the United States, to take a like oath, within ninety days after the granting the register. *The ninth section directs the collector [*606 of each district to keep a record of all ships and vessels to which registers shall have been granted, and prescribes the form of the register. The tenth section directs a copy of each register to be transmitted to the register of the treasury, who shall cause a record of them to be kept. The eleventh section directs the course of proceeding, in case a vessel be purchased by a citizen, before registry, and contains a clause of forfeiture, in case of false swearing. By the thirteenth section, it is enacted, that if the certificate of registry of any vessel shall be lost, destroyed or mislaid, the master, or other person having the charge or command of her, may make oath or affirmation, before the collector of the district, where such vessel shall first be, after such a loss or destruction; and the form of the oath is prescribed. It is an essential part of the oath, that in it shall be stated the name of the collector, and the port at which the former register was granted. The fourteenth section requires, that when a registered vessel shall be sold or transferred to a citizen of the United States, she shall be registered anew, by her former name; and if not registered anew, she shall not be entitled to the privileges or benefits of a ship of the United States. By the twenty-seventh section, it is provided, that if any certificate of registry or record shall be fraudulently or knowingly used for any ship or vessel, not then actually entitled to the benefit thereof, according to the true intent of the act, such ship or vessel shall *be forfeited to the United States, with her [*607 tackle, apparel and furniture.
In the argument of this case, it was admitted by the counsel for the appellants, that the register was improperly obtained, but it was denied, that the vessel became thereby forfeited, under the 27th, or any other section of the registry act. And it was contended, that the owner having a register issued by the collector, was proof that it was not fraudulently obtained. In support of this position, the case of The Anthony Mangin was cited from 3 Cranch 337. To this it was replied, that the appellants purchased the Neptune, knowing that she was without a register. That it was alleged to have been granted to the former owner, by the collector for the port of Wilmington, in North Carolina, and that it was lost. The appellants knew that information had been received from the collector at Wilmington, that a register for the Neptune had never been issued at that port; and that, therefore, it was fraudulently obtained, and used for the Neptune, not then entitled to the benefit of it.
The case of The Anthony Mangin does not support the argument of the appellant's counsel. In that case, an action was brought by the United States *280 against Grundy and Thornburgh, for money had and received for the use of the United States, by the defendants, as assignees of Aquila Brown, junior, a bankrupt, it being money received by the defendants for the sale of the ship Anthony Mangin, which ship the United States alleged was forfeited by *608] reason *that Brown, in order to obtain a register for her, as a ship of the United States, had falsely sworn that she was his sole property, when he knew that she was in part owned by an alien. There was no proceeding in rem against the vessel. It was a suit against the assignees of Brown, for the value of the vessel; and the court decided, that an action for the value could only be supported against the person who had taken the oath.
It is evident, from the facts in this case, that George M. Ogden, when he applied for a register for the Neptune, did not believe that he could with safety take the oath required by law; because he had prepared an oath, varying in form from the oath required, which he pressed the collector to be permitted to take, but which the collector refused to administer. And the collector was of opinion, until he consulted the district-attorney, that he ought not to be permitted to take the oath prescribed, as he could not do it, without swearing to a fact which was known to be untrue. For this reason, he refused to administer the oath to Captain Myrick, in his lifetime.
There are strong grounds for the belief, that the Neptune never had a genuine register. She is represented in the manifest to have been built at Boston, to be owned by Captain Myrick, of New York, and that she belonged to the port of Wilmington, in North Carolina. If she had been built at Boston, and belonged at the time to a person residing in New York, it is more than probable, that, pursuant to the provisions of the third section of the act, she would have been registered at one of those places. If Captain *609] *Myrick, or the present owners, had been desirous of obtaining correct information on the subject, it would have been furnished, on application to the treasury department. All registers are transmitted regularly to the register of the treasury, to be registered in his office.
It should be recollected, that the mate of the Neptune testified, that Captain Myrick, after returning from the house of Messrs. Harrod & Ogdens to his vessel, said, he had left his pocket-book containing the register on their desk. Hence, it is rational to conclude, either that Captain Myrick had no register, or that if he had one, it would not bear inspection.
Upon the whole, the court are of opinion, that the register was fraudulently and knowingly used for the Neptune, when she was not entitled to the benefit of it; and that she is forfeited for a violation of the provisions of the 27th section of the registry act; and that the provisions of that section apply as well to vessels which have not been previously registered, as to those to which registers have been previously granted.
Decree affirmed.
DECREE.  This cause came on to be heard, on the transcript of the record, and was argued by counsel; on consideration whereof, it is decreed and ordered, that the decree of the district court of Louisiana in this case be, and the same is hereby affirmed, with costs and damages at the rate of *610] six per centum *per annum, including interest on the amount of the appraised value of the said ship Neptune, to be computed from the date of the decree of the said district court.