### UNITED STATES of America, Plaintiff,

v.

### A. William ERPENBECK, Defendant.

### No. 1:03–CR–50.

United States District Court, S.D. Ohio, Western Division.

April 13, 2011.

---

Benjamin C. Glassman, Cincinnati, OH, Deborah Diane Grimes, Cincinnati, OH, Deborah F. Sanders, Columbus, OH, for Plaintiff.

Glenn Virgil Whitaker, Cincinnati, OH, Eric Wade Richardson, Vorys, Sater, Seymour & Pease, LLP, Cincinnati, OH, for Defendant.

## ORDER

SANDRA S. BECKWITH, Senior District Judge.

This matter is before the Court on Bankruptcy Trustee Michael Baker's motion to stay second final order of forfeiture (Doc. No. 151). For the reasons that follow, this motion is not well-taken and is **DENIED.**

From 1999 through March 2002, the Defendant in this case, A. William Erpenbeck, perpetrated through his home construction business a massive fraud on certain federally insured financial institutions

and many homeowners. In general, the scheme to defraud involved Erpenbeck's failure to make the required payoffs on construction loans after Erpenbeck's company sold the properties to the buyers of the homes. The loss from Erpenbeck's fraud was almost $34,000,000. On April 9, 2003, Erpenbeck pleaded guilty to a one-count information charging him with fraud against federally insured financial institutions, in violation of 18 U.S.C. § 1344. The information included a provision for Erpenbeck to forfeit any property derived from his violation of § 1344, including a money judgment in the amount of $33,935,878.02, as well as for Erpenbeck to forfeit substitute assets as applicable.

Prior to the filing of the information in this case, however, in July 2002, certain creditors of Erpenbeck's filed an involuntary bankruptcy petition against him in the Bankruptcy Court of the Eastern District of Kentucky. Michael Baker was appointed trustee of the bankruptcy estate.

In September 2003, the Court entered a preliminary order requiring the forfeiture of certain of Erpenbeck's assets. Doc. No. 20. The trustee later filed what amounted to an objection to this order on the grounds that it violated the bankruptcy stay and that the assets belonged to the bankruptcy estate. Doc. No. 53. The trustee and the government later worked out an agreement concerning the division of the proceeds from the sale of these assets. Doc. No. 68.

In April 2004, the Court sentenced Erpenbeck to 360 months of imprisonment. The Court's judgment required Erpenbeck to forfeit assets in the amount of $33,935,878.02 and also listed certain assets that were subject to forfeiture. Doc. No. 71.

In May 2004, the government moved the Court to forfeit as substitute assets $811 that Erpenbeck was carrying at the time of his arrest in February 2004. Doc. No. 86. The Court entered an order forfeiting these funds in June 2004. Doc. No. 91.

In August 2005, the Court, on motion of the government, entered a final order of forfeiture of the property identified in the information. Doc. No. 106.

For reasons not relevant here, the Court of Appeals remanded the case for resentencing. In August 2006, the Court sentenced Erpenbeck to 300 months of imprisonment but otherwise the forfeiture provisions were the same. Doc. No. 132. Erpenbeck's sentence was affirmed by the Court of Appeals in July 2008.

In November 2009, the government filed a motion to correct the preliminary order of forfeiture. Doc. No. 146. The government's motion indicated that in August 2009, FBI agents interviewed Erpenbeck in prison, at which time he informed them that in March 2002, he gave $250,000 in cash, which had been placed in a blue, soft-sided cooler, to a third-party to hold until he was released from prison. The unidentified third-party then buried the cooler on the grounds of Summit Hills Country Club. The FBI recovered the cooler in October 2009. The government's motion sought to forfeit the funds in the cooler, which turned out to be approximately $257,000, as substitute assets under 21 U.S.C. § 853(p). The Court entered a second preliminary order of forfeiture covering the contents of the cooler on November 10, 2009. Doc. No. 147. The order in part required the government to provide written notice of the second preliminary order of forfeiture to all persons known to have an alleged interest in the property and to post notice of the forfeiture on the government's website for 30 consecutive days.

In December 2009, the government filed proof of publication of the notice on its website. Doc. No. 148

16

On June 29, 2010, the government moved for a final order of forfeiture of the contents of the cooler. Doc. No. 149. The government's motion indicated that notice of the forfeiture had been posted on the official government website, that it knew of no other potential claimants to the substitute property, and that no person had filed a timely petition asserting an interest in the substitute property. The Court, accordingly, entered a final order forfeiting the contents of the cooler on June 30, 2010. Doc. No. 150.

On November 17, 2010, the bankruptcy trustee filed the instant motion for the Court to stay the final order of forfeiture of the contents of the cooler. Doc. No. 151. This motion is similar in content to the original motion the trustee filed objecting to the first preliminary order of forfeiture. The trustee argues that the contents of the cooler belong to the bankruptcy estate and are not subject to forfeiture and that the forfeiture order violates the automatic stay of the bankruptcy court. The trustee also contends that he did not have notice of the second final order of forfeiture and, moreover, the government misrepresented in its motion that it was unaware of any parties having an interest in the contents. In support, the trustee points to correspondence between his office and the Assistant United States Attorneys expressing his interest in the contents of the cooler, as well as learning whether the government intended to forfeit the funds. The trustee argues further that his claim to the funds is superior to the government's because the title to substitute assets does not relate back to the date of the commission of the crime. The trustee also contends that the bankruptcy estate is a preferable method to distribute the property to Erpenbeck's creditors.

The Court observes, however, that although the trustee contends that he did not receive notice of the government's motion for a final order of forfeiture, he apparently concedes, albeit tacitly, that he did receive notice of the Court's order preliminarily forfeiting the contents of the cooler. In his motion, the trustee states, "Most notably, the discussions in which the Trustee asserted his claim to the Property were held *after the United States had filed its preliminary forfeiture motion in November of 2009 but before it filed its final order in June of 2010.* Doc. No. 151, at 4 (emphasis added).

The government responds that the trustee's motion should be denied. The government states that failure to notify the trustee of its final forfeiture motion was inadvertent because it assumed that notice would be provided through the Court's electronic case filing system. The government states further that it had no reason to know that Erpenbeck's bankruptcy estate was still open after so many years. Having notice of the forfeiture proceedings, however, the government argues that the trustee essentially waived an opportunity to establish his claimed superior title to the subject funds when the trustee failed to file a timely petition pursuant to 21 U.S.C. § 853(n). Finally, the government argues that the relation back doctrine applies to substitute assets and that the bankruptcy stay provisions do not apply to criminal forfeiture proceedings.

On review of the pleadings and the record, the Court concludes that: 1) the automatic bankruptcy stay provisions do not apply to criminal forfeiture proceedings because they are ancillary to the defendant's sentencing and are part of the government's police and regulatory powers; and 2) the trustee waived his claim to the funds by not filing a timely petition to assert his alleged superior title under § 853(n). The Court, therefore, need not reach the question whether or to what

point title to the funds relates back to the government.

■ The first question is whether the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362(a), essentially divested the Court of jurisdiction over proceedings concerning forfeiture of the recovered money. It is clear to the Court that the criminal forfeiture proceedings are exempted from the Bankruptcy Code's stay provisions because they are part of a criminal action or proceeding against the debtor, and/or fall within the government's police and regulatory powers. Section 362(b)(1) excludes from the automatic stay provision "the commencement or continuation of a criminal action or proceeding against the debtor[.]" 11 U.S.C. § 362(b)(1)(a). It is well-established that "criminal forfeiture [is] an aspect of punishment imposed following conviction of a substantive criminal offense." *Libretti v. United States*, 516 U.S. 29, 39, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995). Thus, the criminal forfeiture proceedings in this case against Erpenbeck are a part of or continuation of his criminal fraud prosecution. *United States. v. Coluccio*, 19 F.3d 1115, 1117 n. 2 (6th Cir.1994)("The protective stay, however, is not absolute, and allows enforcement of criminal laws and penalties incident thereto.") (citing 11 U.S.C. § 362(b)(1)). Moreover, forfeiture proceedings are similar to criminal restitution hearings which are also exempt from the bankruptcy stay pursuant to § 362(b)(1). *In re Walker*, 157 Fed.Appx. 171, 172 (11th Cir.2005). Forfeiture actions are also exempt from the automatic stay pursuant to § 362(b)(4) because they involve the enforcement of the government's police and regulatory powers. *In re WinPar Hospitality Chattanooga, LLC*, 401 B.R. 289, 293 (Bkrtcy.E.D.Tenn.2009)("[M]ost of the courts that have addressed the issue presented in this proceeding have held that

forfeiture actions involving alleged proceeds of criminal activity come within the police power exception to the automatic stay."); *see also In re Commerce Oil Co.*, 847 F.2d 291, 296 (6th Cir.1988) ("*Punishing wrongdoers*, deterring illegal activity, recovering remedial costs of damage to the environment, providing for the costs of administration and weighing the social and economic value of a discharge source are exercises of the state's regulatory power to effectuate public policy and are not actions based upon the state's property interests.") (emphasis added). Accordingly, the Court concludes that the bankruptcy stay did not divest the Court of jurisdiction over forfeiture proceedings concerning the contents of the cooler.

■ The trustee's position in this case is that as a result of the filing of the Chapter 7 petition, the bankruptcy estate's title to the recovered funds is superior to the government's. Section 853(n), however, provides the exclusive mechanism for resolving this issue. *United States v. Phillips*, 185 F.3d 183, 186 (4th Cir.1999). The government is entitled to retain substitute assets after a trial pending completion of forfeiture proceedings. *United States v. Ford*, 64 Fed.Appx. 976, 982 (6th Cir.2003). Substitute assets may be forfeited if, *inter alia*, the property directly connected to the offense cannot be located despite due diligence. *United States v. Hill*, 46 Fed. Appx. 838, 839 (6th Cir.2002); 21 U.S.C. § 853(p)(1)(A). In this case, in support of its motion for a preliminary order of forfeiture, the government supplied the affidavit of FBI Special Agent Gormley, who stated that Erpenbeck had made the proceeds of his fraud unavailable by various means and that, despite extensive investigation, the government has been unable locate funds to satisfy the money judgment. Doc. No. 146–1, Gormley Aff. ¶ 2. The government, therefore, properly established that the

funds in the cooler were subject to forfeiture as substitute assets. Thus, although the trustee claims superior title to the funds, the trial court is required to enter a preliminary order of forfeiture if it finds that the property is subject to forfeiture, regardless of any other third party's interest in the property. Fed.R.Crim.P. 32.2(b)(2)(A).

■ Consequently, as stated, once the preliminary order of forfeiture was issued, the trustee's only available avenue to establish his title was to file a timely petition to adjudicate his interest in the funds. 21 U.S.C. § 853(n)(2). The government complied with the requirement to publish the preliminary order of forfeiture. 21 U.S.C. § 853(n)(1). Additionally, as indicated above, the trustee apparently had actual notice of the preliminary order of forfeiture. Despite, however, having both actual and constructive notice of the preliminary order of forfeiture, the trustee failed to file a timely petition to assert his interest in the funds. Indeed, the trustee has not even attempted to file an untimely petition to assert his interest in the funds. The trustee, therefore, forfeited any claim to the funds by failing to file a timely petition to assert his interest. *United States v. Marion,* 562 F.3d 1330, 1337 (11th Cir.2009); *United States v. Grossman,* 501 F.3d 846, 848–49 (7th Cir.2007).

Not only that, once the 30 day period for filing a petition under § 853(n)(2) expired, the preliminary order of forfeiture became final, Fed.R.Crim.P. 32.2(c)(2), and title to the funds automatically vested in the United States. 21 U.S.C. § 853(n)(7). Thus, even if the trustee did not receive actual notice of the government's motion for a final order of forfeiture as he contends, this omission does not warrant vacating or staying the order of forfeiture since the United States had obtained title to the

funds by that time by operation of the statute.

For all of those reasons, the trustee's arguments concerning whether the relation back doctrine applies to substitute assets is inconsequential. The trustee had an opportunity to assert his superior title to the funds by filing a timely petition. He did not do so. Title to the funds went to the United States 30 days after publication of the notice of preliminary order of forfeiture regardless of when the involuntary bankruptcy proceedings against Erpenbeck were instituted. Moreover, the trustee's reliance on *United States v. Parrett,* 530 F.3d 422 (6th Cir.2008), in support of his relation back argument is inapt. While the *Parrett* Court did indeed note that the substitute assets provision of § 853(p) does not provide a specific relation back provision such as the one provided for tainted assets by § 853(c), "relation back" was not the issue in that case. Instead, the issue before the Court was whether the government can restrain substitute assets pretrial; the Court used the presence or absence of relation back provisions to highlight Congress's intent to treat tainted assets and substitute assets differently. *Id.* at 430. It is important to restate, however, that this discussion was in the context of pretrial restraint of substitute assets, not post-trial ancillary forfeiture proceedings. The *Parrett* Court, in fact, never held that title to substitute assets cannot relate back to the time of the commission of the crime. Indeed, the government's relation back rights in substitute assets arguably may be implied into § 853(p) by common law. *See United States v. 92 Buena Vista Ave.,* 507 U.S. 111, 127, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) ("If the Government wins a judgment of forfeiture under the common-law rule—which applies to common law forfeitures and to forfeitures under statutes without specific relation back provisions—

the vesting of its title in the property relates back to the moment when the property became forfeitable."); *United States v. Grundy,* 3 Cranch 337, 350–51, 2 L.Ed. 459 (1806) (Marshall, C.J.) (stating that under the common law, "the doctrine of relation carries back the title to the commission of the offence.").

In any event, for all of the above reasons, the Court concludes that the trustee waived his claim to the funds by failing to file a timely petition under § 853(n)(2). Accordingly, the trustee's motion to stay the second final order of forfeiture is not well-taken and is **DENIED.**

**IT IS SO ORDERED.**