873 F.2d 242
 63 A.F.T.R.2d 89-1230, 89-1 USTC P 9278
 Peter M. EGGLESTON, Plaintiff,
v.
The STATE OF COLORADO, et al.,
Defendants-Cross-Appellees/Cross-Appellants.
UNITED STATES of America, Plaintiff-Appellant/Cross-Appellee,
v.
$1,508,440.00 IN UNITED STATES CURRENCY, Defendant.
UNITED STATES of America, Plaintiff,
v.
TWELVE GOLD BARS, Defendants.
 Nos. 86-2151, 86-2192.
 United States Court of Appeals,
Tenth Circuit.
 April 21, 1989.
 
 F. Joseph Mackey, III, Asst. U.S. Atty. (Robert N. Miller, U.S. Atty., D. Colo., with him on the briefs), Mountain States Drug Task Force, for plaintiff-appellant.
 Larry A. Williams, First Asst. Atty. Gen. (Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., and Richard H. Forman, Sol. Gen., with him on the briefs), Gen. Legal Services Section, Colorado Dept. of Revenue, for defendants-appellees.
 Before TACHA and SETH, Circuit Judges, and SAFFELS, District Judge.*
 TACHA, Circuit Judge.
 
 
 1
 This appeal arises from a dispute between state and federal agencies over property seized by law enforcement officials as proceeds of illegal drug trafficking. The federal Drug Enforcement Administration (DEA), the Internal Revenue Service (IRS), the Colorado Department of Revenue, and several other parties each claimed an interest in the property. The district court held that the Colorado Department of Revenue's lien for income taxes had priority over all claims and ordered the remainder of the property to be applied in partial satisfaction of a federal income tax lien, denying all other claims. We reverse and remand.
 
 I.
 
 2
 This case was tried upon stipulated facts that are set out in detail in the district court's opinion, Eggleston v. Colorado, 636 F.Supp. 1312 (D.Colo.1986). We therefore do not repeat them here, except for the following background facts necessary for our decision.
 
 
 3
 On November 21, 1982, Lakewood, Colorado police seized twelve one-ounce gold bars and approximately $1.5 million in cash from the home of Victoria and Albert Levy. Id. at 1316. This property was the proceeds of illegal drug transactions. Id. Soon after this seizure, several parties claimed an interest in the property and began maneuvering to establish the priority of their claims. Id. at 1316-17. The claims of all interested parties were consolidated for trial before the district court. Id. at 1314-15. Most pertinent to this appeal are the claims of the Colorado Department of Revenue, the IRS, and the DEA.[1]
 
 
 4
 The Colorado Department of Revenue prepared sales, income, and Regional Transportation District (RTD) tax assessments against Albert Levy on December 22, 1982. Id. at 1317. Notices of tax lien and garnishment under distraint for collection were filed, and the Arapahoe County district court entered judgment in favor of the Department on December 23, 1982, as follows: Colorado sales tax--$115,880.12; Colorado income tax--$58,677.00; and RTD sales tax--$19,313.39. Id.
 
 
 5
 On January 5, 1982, the IRS assessed a tax liability of $1,962,563 against Albert Levy pursuant to its power under 26 U.S.C. Sec. 6851(a). Eggleston, 636 F.Supp. at 1317, 1319. Levy received notice of the assessment and demand for payment, but failed to pay the assessment. Id. at 1319. A lien therefore arose by operation of law on January 5, 1982. Id. (citing 26 U.S.C. Secs. 6321, 6322).
 
 
 6
 Finally, the DEA claimed the property under the civil forfeiture provisions of 21 U.S.C. Sec. 881(a)(6). Eggleston, 636 F.Supp. at 1318. Although the Government had not yet obtained a judgment of forfeiture and did not file a claim for forfeiture until after the state and federal tax liens had been filed, the DEA argued that forfeiture relates back to the moment of illegal use of the property, thereby vesting title to the property in the federal government as of that moment and preventing the attachment of all liens arising subsequent to the moment of illegal use. Id.
 
 
 7
 Applying settled principles of priority, the district court denied the claims of all parties other than the DEA, the IRS, and the Colorado Department of Revenue. The court held that because the state and federal tax liens were clearly established before the other claims had been filed, or had become choate, those other claims were inferior to the tax liens. Id. at 1319-20 (citing United States v. New Britain, 347 U.S. 81, 84, 85, 74 S.Ct. 367, 369, 370, 98 L.Ed. 520 (1954)). Furthermore, the amount of the tax liens clearly exceeded the value of the seized property, making a decision as to the validity and priority of the inferior claims unnecessary.
 
 
 8
 The critical issues before the district court therefore concerned the validity of the state tax liens and the priority among the claims of the DEA, the IRS, and the Colorado Department of Revenue. The district court upheld the validity of the state income tax lien, but denied the validity of the Colorado Department of Revenue's state sales tax and RTD sales tax claims. Id. at 1324. The district court decided that, under Colorado law, state sales and RTD taxes can be imposed only if the underlying sales can be construed as retail, rather than wholesale, transactions. Id. (citing Colo.Rev.Stat. Sec. 39-26-104(1)(a) (1982)). The court, therefore, held that the sales tax liens in this case were invalid because the Department had failed to produce evidence indicating that the underlying drug sales had been retail sales. Id.
 
 
 9
 Regarding priority, the state income tax lien was held to be superior to the federal tax lien because it was filed first. Id. at 1324-25. The IRS conceded that the state income tax lien was filed first, but argued along with the DEA that forfeiture to the federal government under 21 U.S.C. Sec. 881 should prevail over all tax liens because such forfeiture related back to the time of the offense. Eggleston, 636 F.Supp. at 1318.
 
 
 10
 The district court rejected the DEA's forfeiture claim, holding that forfeiture did not relate back to the time of the offense because 21 U.S.C. Sec. 881 is a permissive, rather than a mandatory, forfeiture provision. Eggleston, 636 F.Supp. at 1323-24. Accordingly, the DEA's claim for forfeiture could vest only when the judgment of forfeiture has been entered, and the forfeiture would operate prospectively from that time. See id. The court did not enter a judgment of forfeiture, apparently for the same reason that other inferior claims were denied--the superior tax liens would have exhausted the property in dispute, making futile an order of forfeiture that did not relate back prior to the time such liens were entered.
 
 
 11
 The DEA appealed, claiming that the district court erred in its construction of 21 U.S.C. Sec. 881 by refusing to recognize that such forfeiture related back to the time the property was unlawfully used. The Colorado Department of Revenue filed a cross-appeal, contending that the district court erred in denying the validity of the Department's state sales tax and RTD sales tax liens. The Department further contends that even if the forfeiture relates back, sales tax proceeds held by Albert Levy are exempt from forfeiture under the so-called "innocent owner" exception of 21 U.S.C. Sec. 881(a)(6).
 
 II.
 
 12
 Three questions are presented by this appeal: first, whether civil forfeiture under 21 U.S.C. Sec. 881 relates back to the moment that property was received in an illegal transaction, thereby voiding subsequent interests in the property; second, if forfeiture relates back, whether the sales tax liens, if valid, are preserved from forfeiture; and, finally, if such liens are preserved from forfeiture, whether the district court erred in placing the burden of proof upon the Department of Revenue to establish that retail, and not wholesale, sales were involved.
 
 A.
 
 13
 Civil forfeiture statutes, such as 21 U.S.C. Sec. 881, "grow out of a legal heritage in which objects considered 'guilty' were held forfeit." United States v. $39,000 in Canadian Currency, 801 F.2d 1210, 1218 n. 4 (10th Cir.1986). "The legal fiction underlying civil forfeitures characterizes them as proceedings in rem against 'offending inanimate objects' as defendants." Id. at 1218 (quoting Bramble v. Richardson, 498 F.2d 968, 971 (10th Cir.), cert. denied, 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974)). The fiction that the "offense" was committed by the property subject to forfeiture underlies the common-law doctrine of relation back. At common law, after the government took legal steps to assert its rights to property subject to forfeiture, thereby vesting title to the property in the government, the doctrine of relation back applied in some cases to "carr[y] back the title to the commission of the offense." United States v. Grundy & Thornburgh, 7 U.S. (3 Cranch) 337, 350-51, 2 L.Ed. 459 (1806).
 
 
 14
 When Congress has provided for forfeiture by statute, however, we need not rely on the common law of forfeiture:
 
 
 15
 Where a forfeiture is given by a statute, the rules of the common law may be dispensed with, and [whether] the thing forfeited may either vest immediately, or on the performance of some particular act, shall be the will of the legislature. This must depend upon the construction of the statute.
 
 
 16
 Id. at 351; see United States v. 1960 Bags of Coffee, 12 U.S. (8 Cranch) 398, 404-05, 3 L.Ed. 602 (1814). The Supreme Court has stated as "settled doctrine" the following rule of construction:
 
 
 17
 [W]henever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed; and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith.
 
 
 18
 United States v. Stowell, 133 U.S. 1, 16-17, 10 S.Ct. 244, 247, 33 L.Ed. 555 (1890).
 
 
 19
 With this rule of construction in mind, we turn to the relevant language of section 881:
 
 
 20
 The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 
 
 21
 ....
 
 
 22
 (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 
 23
 21 U.S.C. Sec. 881(a) (emphasis added).
 
 
 24
 We find that section 881, on its face, provides for immediate forfeiture to the government at the time the illegal act is committed. The United States' title in the illegally obtained property therefore relates back to the time of the offense. See United States v. $41,305.00 in Currency & Travelers Checks, 802 F.2d 1339, 1346 (11th Cir.1986); Western Pac. Fisheries, Inc. v. SS President Grant, 730 F.2d 1280, 1286-87 (9th Cir.1984); United States v. $84,000 in United States Currency, 717 F.2d 1090, 1101-02 (7th Cir.1983), cert. denied, 469 U.S. 836, 105 S.Ct. 131, 83 L.Ed.2d 71 (1984); United States v. One Parcel of Real Estate, 660 F.Supp. 483, 487 (S.D.Miss.), appeal dismissed without published op., 822 F.2d 57 (5th Cir.), and aff'd and remanded for sanctions, 831 F.2d 566 (5th Cir.1987). But see United States v. Thirteen Thousand Dollars in United States Currency, 733 F.2d 581, 583-84 (8th Cir.1984).
 
 
 25
 The Colorado Department of Revenue contends that section 881 is permissive, rather than mandatory, and therefore forfeiture does not relate back to the time of the offense. This argument is premised upon the fact that the language of section 881(a), "shall be subject to forfeiture," does not identically track the "shall be forfeited" language used by the Supreme Court in Stowell. This difference, the Department contends, prevents application of the relation back doctrine applied by Stowell. We disagree.
 
 
 26
 First, the Department's argument ignores the statutory language that follows: "The following [types of property] shall be subject to forfeiture to the United States and no property right shall exist in them...." 21 U.S.C. Sec. 881(a) (emphasis added). This language makes clear that property rights are divested immediately at the moment such property is used in a manner or context prescribed by section 881, and not at some future time. The language "subject to forfeiture" is merely used in this statute to give notice of the scope of property that shall be forfeited.
 
 
 27
 Second, in order to be a permissive statute, the face of the statute must provide an option for the government to institute forfeiture. See Grundy & Thornburgh, 7 U.S. (3 Cranch) at 350-52. In Grundy & Thornburgh, the forfeiture statute gave the government the option of pursuing an action for forfeiture of a ship or an action for the value of the ship. Id. at 351. Because such an option was present, the Supreme Court held that forfeiture of title did not relate back to the time of the illegal act. Id. at 354. No similar option exists in section 881. Although the government apparently could choose to forgo forfeiture altogether, see Western Pac. Fisheries, 730 F.2d at 1287 (noting that limitations period would prevent forfeiture action at some point), governmental discretion that is not founded on explicit language of the statute does not make the statute permissive.
 
 
 28
 The Colorado Department of Revenue further contends that section 881 is permissive because of its provision for an exception in the case of the so-called innocent owner:
 
 
 29
 [N]o property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 
 30
 21 U.S.C. Sec. 881(a)(6). The Department relies upon the following language in Henderson's Distilled Spirits, 81 U.S. (14 Wall.) 44, 20 L.Ed. 815 (1871), which summarizes the rule applied in the cases decided up to that time:Many such adjudged cases are to be found in the reported decisions of this court, and it must be admitted that they establish as the rule beyond all doubt, that the forfeiture becomes absolute at the commission of the prohibited acts, and that the title from that moment vests in the United States in all cases where the statute in terms denounces the forfeiture of the property as a penalty for a violation of law, without giving any alternative remedy, or prescribing any substitute for the forfeiture, or allowing any exceptions to its enforcement, or employing in the enactment any language showing a different intent....
 
 
 31
 Id. at 57 (emphasis added). Thus, the Department argues that even if section 881 does not give an alternative remedy, as in Grundy & Thornburg, the fact that the statute provides an exception to its enforcement prevents forfeiture from relating back.
 
 
 32
 Whatever the merits of the rule stated by the Supreme Court in 1871, the Court's subsequent decision in Stowell made clear that an exception for innocent holders did not prevent forfeiture from relating back in the case of holders who did not qualify for the exception. A forfeiture statute in Stowell applied to real property owned by a person who " 'knowingly has suffered or permitted the business of a distiller to be there carried on, or has connived at the same.' " Stowell, 133 U.S. at 2 n. 1, 10 S.Ct. at 244 n. 1 (quoting Act of Feb. 8, 1875, ch. 36, Sec. 16, 18 Stat. 307, 310). Referring to that statute, the Court stated:
 
 
 33
 Congress had thus clearly manifested its intention that the forfeiture of land and buildings shall not reach beyond the right, title, and interest of the distiller, or of such other persons as have consented to the carrying on of the business of a distiller upon the premises.
 
 
 34
 Id. at 14, 10 S.Ct. at 246. This did not preclude application of the relation back doctrine. See id. at 17-18, 10 S.Ct. at 247-48.
 
 
 35
 Finally, we note that the legislative history of the 1984 amendments to section 881 also support this result. Section 881(h) was added in 1984 to state explicitly that forfeiture divested title upon commission of the illegal act. 21 U.S.C. Sec. 881(h). The Senate report explaining that amendment shows that Congress relied upon the common-law "taint" theory--that property is considered tainted from the time of its prohibited use or acquisition--in enacting 21 U.S.C. Sec. 881(h). See S.Rep. No. 225, 98th Cong., 2d Sess. 196, 215, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3379, 3398. The report notes that the relation back principle of 21 U.S.C. Sec. 881(h) is "well established in current law," S.Rep. No. 225, 98th Cong., 2d Sess. 215, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3398, thus indicating that Congress had intended to apply relation back all along.
 
 
 36
 We therefore hold that when the government brings an action for forfeiture under 21 U.S.C. Sec. 881, a judgment of forfeiture relates back to the time of the unlawful act, vesting title to forfeited property in the government as of that moment. Forfeiture therefore cuts off the rights of subsequent lienholders or purchasers, subject to the so-called innocent owners exception in section 881(a)(6). We next must determine, therefore, whether the state sales tax liens, if valid, are preserved from forfeiture under this exception.
 
 B.
 
 37
 The Colorado Department of Revenue contends that even if forfeiture under section 881 generally relates back to the time of the illegal transaction, its sales tax liens are preserved from such forfeiture under the innocent owner exception of section 881(a)(6). Under Colorado law,
 
 
 38
 [a]ll sums of money paid by the purchaser to the retailer as taxes imposed by this article shall be and remain public money, the property of the state of Colorado, in the hands of such retailer, and he shall hold the same in trust for the sole use and benefit of the state of Colorado until paid to the executive director of the department of revenue.
 
 
 39
 Colo.Rev.Stat. Sec. 39-26-118(1) (1982). The Department thus claims that Albert Levy, the person transacting in drugs, never owned the sales tax portion of the drug sale proceeds, but merely held them in trust for the state, which was unaware of the use of such property in drug transactions. The Department contends that it qualifies as a so-called innocent owner of the property, thereby exempting the sales tax proceeds from forfeiture under 21 U.S.C. Sec. 881(a)(6).
 
 
 40
 This argument misapprehends the fact that forfeiture occurs before any property interest in a sales tax "trust" arises. The innocent owner exception applies only to owners whose interest vests prior to the date of the illegal act that forms the basis for the forfeiture. United States v. One Parcel of Real Estate, 660 F.Supp. at 487; cf. Simons v. United States, 541 F.2d 1351, 1352 (9th Cir.1976) (applying same principle to 49 U.S.C. Sec. 782). The sales tax trust alleged in this case does not exist until the vendor receives value from the purchaser. The Colorado statute upon which the Department relies clearly states that the trust applies to all "sums of money paid by the purchaser to the retailer" and that such payments do not become "public money" until they are "in the hands of such retailer." Colo.Rev.Stat. Sec. 39-26-118(1).
 
 
 41
 In contrast, forfeiture under section 881 occurs before value is received by the vendor. Section 881(a)(6) applies to "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance." 21 U.S.C. Sec. 881(a)(6). Forfeiture therefore occurs while the value is still in the hands of the purchaser, at the moment when the purchaser manifests intent to exchange value for a controlled substance.
 
 
 42
 We find that the Colorado Department of Revenue is not an innocent owner for purposes of section 881(a)(6) because the title to such property vested in the United States through forfeiture prior to any ownership interest held by the State. Because we find that the state sales tax liens are not exempt from forfeiture, we need not address whether the district court erred in requiring that the Department of Revenue establish that retail, and not wholesale, sales were involved.
 
 III.
 
 43
 We hold that the property at issue in this case should be forfeited to the United States and that title in the United States relates back to the time of the illegal drug transaction, thereby defeating all competing claims to the property. The district court did not enter an order of forfeiture for the apparent reason that such an order would be futile if superior claims would exhaust the property. From the stipulated facts, we see no reason why such an order should not be granted. We therefore REVERSE and REMAND to the district court with direction to enter an order of forfeiture in favor of the United States and to direct such other action as may be appropriate and consistent with this opinion.
 
 
 
 *
 Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 Other parties also claimed an interest in the property, including a bank, Albert Levy, Victoria Levy, the State of Colorado, and the trustee of a trust to which Albert Levy had assigned all of his interest in the property for the purpose of paying any federal income tax liability. Eggleston v. Colorado, 636 F.Supp. 1312, 1319 (D.Colo.1986)