# Liability of the United States for State and Local Taxes on Seized and Forfeited Property

Property seized by, and ultimately forfeited to, the federal government is not subject to state and local taxes that arise after the date of the offense that leads to the order of forfeiture.*

July 9, 1991

## MEMORANDUM OPINION FOR THE ASSOCIATE DEPUTY ATTORNEY GENERAL

This memorandum responds to your request for our opinion whether property seized by, and ultimately forfeited to, the federal government is subject to taxation by state and local authorities. We conclude that principles of intergovernmental tax immunity, combined with longstanding rules governing forfeiture and the express language of modern forfeiture statutes, establish that property ultimately forfeited to the federal government is not subject to state and local taxes arising after the date of an offense that leads to the order of forfeiture.[1]

Property actually forfeited to the United States is immune from taxation by state and local authorities in the absence of express congressional authorization.

---

* Editor's Note: The views of the Office were later revised in light of *United States v. 92 Buena Vista Ave.*, 507 U.S. 111 (1993) (plurality and concurring opinions established that the interests of innocent owners who acquire property after commission of an act leading to forfeiture are not defeated by the forfeiture action). *See* Memorandum for Cary H. Copeland, Director and Chief Counsel, Executive Office for Asset Forfeiture, *Re: Liability of the United States for State and Local Taxes on Seized and Forfeited Property* (Oct. 18 1993) ( to be published) ( in civil forfeiture proceedings, the United States is obligated to pay liens for state and local taxes accruing after the commission of the offense leading to forfeiture and before the entry of a judicial order of forfeiture, if the lien-holder establishes innocent ownership of its interests, but the United States may not pay such liens in criminal forfeiture proceedings because state and local tax lien-holders are not bona fide purchasers for value of the interests they would assert). *See also* Memorandum for Cary H. Copeland, Director and Chief Counsel, Executive Office for Asset Forfeiture and James Knapp, Deputy Director, Asset Forfeiture Office, Criminal Division. *Re: Authority to Pay State and Local Taxes on Property After Entry of an Order of Forfeiture* (Dec. 9 1993) (to be published) (the Attorney General has discretionary authority under the civil and criminal forfeiture statutes to compensate state and local governments for tax revenues lost as a result of a forfeiture).

[1] Currently, "[t]he [Justice] Department's position is that the doctrine of sovereign immunity precludes the payment of State and local taxes on property which has been seized for federal forfeiture." Memorandum for United States Attorneys Offices from Cary H. Copeland, Director, Executive Office for Asset Forfeiture, *Re: Forfeiture Policies* at 1 (July 3, 1990). Under this policy, the "date of the seizure marks the imposition of sovereign immunity." *Id.* at 2. The Department, therefore, "will not pay State or local taxes incurred after the property is seized for forfeiture." *Id.*

This doctrine finds its classic expression in *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819). As the Court has subsequently explained, under *M'Culloch* "a State cannot constitutionally levy a tax directly against the Government of the United States or its property without the consent of Congress." *United States v. City of Detroit*, 355 U.S. 466, 469 (1958). *See also Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 175 (1989) ("[A]bsent express congressional authorization, a state cannot tax the United States directly."); *United States v. Allegheny County*, 322 U.S. 174, 177 (1944) (the "possessions, institutions, and activities of the Federal Government itself in the absence of express congressional consent are not subject to any form of state taxation").[2] Once property is forfeited to the United States, an attempt by a state or local government to tax that property in the absence of consent by the Congress is plainly invalid under the longstanding doctrine of intergovernmental tax immunity.[3]

The process of forfeiture presents the question whether that immunity might attach before the date on which the forfeiture is perfected by entry of an order of forfeiture. We conclude that it does, by operation of the relation back doctrine, which is codified in the major federal forfeiture statutes. For example, the provisions of federal law relating to civil forfeiture of certain drug-related property were amended by the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, 2051 (1984), to provide that "[a]ll right, title, and interest in property [subject to forfeiture] shall vest in the United States upon commission of the act giving rise to forfeiture under this section." 21 U.S.C. § 881(h). *See also* 18 U.S.C. § 1963(c) (same); 21 U.S.C. § 853(c) (same).[4]

Under this principle, which by 1890 was the "settled doctrine" of the Supreme Court with respect to forfeitures,

> whenever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, *the forfeiture takes effect immediately upon*

---

[2] The federal government's tax immunity has been described as a function of the supremacy of federal law under Article VI of the Constitution, *United States v. New Mexico*, 455 U.S. 720, 733 (1982); *M'Culloch*, 17 U.S. at 436 (describing tax immunity as "the unavoidable consequence of that supremacy which the constitution has declared"); and as a function of sovereign immunity, *Kern-Limerick, Inc. v. Scurlock*, 347 U.S. 110, 122 (1954).

[3] If seized property is not ultimately forfeited to the federal government, the owner of the property would remain liable for state and local taxes.

[4] Some courts have held that the relation back doctrine, if not expressly set forth in the statute, is simply a rule of statutory construction that applies only to those statutes making forfeiture automatic rather than permissive. *See, e.g., United States v. Thirteen Thousand Dollars in United States Currency*, 733 F.2d 581, 584 (8th Cir. 1984); *United States v. Currency Totalling $48,318.08*, 609 F.2d 210 (5th Cir. 1980). *See generally* Mark A. Jankowski, Note, *Tempering the Relation-Back Doctrine: A More Reasonable Approach to Civil Forfeiture in Drug Cases*, 76 Va. L. Rev. 165, 181-83 (1990). After the adoption of express relation back provisions in the major forfeiture statutes, these holdings would appear to be of limited practical significance.

> *the commission of the act*; the right to the property then vests in the United States, although [its] title is not perfected until judicial condemnation; *the forfeiture constitutes a statutory transfer of the right to the United States at the time the offence is committed*; and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith.

*United States v. Stowell*, 133 U.S. 1, 16-17 (1890) (emphases added). *See also United States v. Grundy & Thornburgh*, 7 U.S. (3 Cranch) 337, 348-54 (1806); *Florida Dealers and Growers Bank v. United States*, 279 F.2d 673, 677 (5th Cir. 1960).

Under the relation back doctrine, the United States' title to forfeited property, although not perfected until an order of forfeiture is entered, arises on the date of the offense giving rise to forfeiture. *Florida Dealers and Growers Bank*, 279 F.2d at 676 ("At th[e] moment [of the illegal act] the right to the property vests in the United States, and when forfeiture is sought, the condemnation when obtained relates back to that time . . . ."); *United States v. 6960 Miraflores Ave.*, 731 F. Supp. 1563, 1567 (S.D. Fla. 1990) ("A final judgment of forfeiture merely confirms the government's interest . . . ").* Because the interest of the United States arises on the date of the offense, the federal government's tax immunity mandates that no state and local tax obligations may attach to the property after that date absent congressional authorization.

We have identified no congressional authorization sufficient to permit payment of state and local tax obligations arising after title to the property vests in the United States. Authority to pay state and local taxes on federally-owned property requires "express congressional authorization" to waive tax immunity. *Cotton Petroleum Corp. v. New Mexico*, 460 U.S. at 175. *See also Kern-Limerick, Inc. v. Scurlock*, 347 U.S. at 122 (court will not "subject the Government or its official agencies to state taxation without a clear congressional mandate").[5] None of the relevant statutory provisions contains such authorization.

Although the statutory forfeiture provisions do contain some exceptions, none of those exceptions contemplates payment of state and local taxes. The exceptions to the criminal forfeiture statutes for a "bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture," 18

---

[5] An example of such an explicit authorization is 42 U.S C § 1490h ("All property . . . the title to which is acquired or held by the Secretary under this subchapter other than property used for administrative purposes shall be subject to taxation by a State, Commonwealth, territory, possession, district, and local political subdivisions in the same manner and to the same extent as other property is taxed . . . .").

\* Editor's Note: After this opinion was issued, *Miraflores* was overruled on other grounds, *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80 (1992).

U.S.C. § 1963(c), 21 U.S.C. § 853(c), provide no authority for payment of state and local taxes. These exceptions not only fail to contain an express waiver of tax immunity, but also do not, in their general language, reach the asserted interest of taxing authorities in the property, for those authorities do not qualify as bona fide purchasers for value.

The civil forfeiture statute's somewhat broader exception for "innocent owners," 21 U.S.C. § 881(a)(6), as the Department has traditionally interpreted it, does not waive the government's tax immunity. It consistently has been the position of the United States that one cannot qualify as an innocent owner if the asserted ownership interest (broadly construed to include liens) arose after the date of the offense at issue.[6] Given this reading, which we have no occasion to question here, there is no statutory basis for permitting state and local tax liens arising after the date of the offense to qualify for payment under the exception.

We also find no authorization for the payment of state or local taxes in either the Attorney General's authority under 28 U.S.C. § 524(c)(1)(D) to pay "valid liens" against forfeited property or his authority under 28 U.S.C. § 524(c)(1)(E) to grant remission or mitigation of forfeiture. Neither of these provisions contains the express congressional authorization necessary to pay state and local taxes on federal property. Nor do they describe a category of permissible actions that might arguably include payment of state and local tax claims. Although the lien provision may permit the Attorney General to recognize property interests -- including tax liens -- in forfeited property that existed prior to the date of the offense, it does not make valid otherwise invalid attempts by state and local taxing authorities to attach liens to property after title has vested in the federal government. In like fashion, the Attorney General's authority to grant remission of forfeiture is insufficient to permit payment of tax liens attaching after the relevant offense, for such relief can be granted only if the petitioner "has a valid, good faith interest in the seized property as owner or otherwise." 28 C.F.R. § 9.5(b)(1).[7]

Our conclusion is consistent with that of courts that have considered related questions. Most directly relevant is the Tenth Circuit's decision in *Eggleston v. Colorado*, 873 F.2d 242 (10th Cir. 1989), *cert. denied*, 493 U.S. 1070 (1990). There, the court held that the state's tax claims were invalid

---

[6] *See, e.g., In Re One 1985 Nissan*, 889 F.2d 1317, 1320 (4th Cir. 1989); *United States v. 6960 Miraflores Ave.*, 731 F. Supp. at 1568 ("The Government contends . . . that the innocent owner provision only applies to claimants who owned the property at the time of the offense, and not to those who acquired the property afterward . . . ."). Most courts that have considered this position have agreed that "[t]he innocent owner exception applies only to owners whose interest vests prior to the date of the illegal act that forms the basis for forfeiture." *Eggleston v. Colorado*, 873 F.2d 242, 248 (10th Cir. 1989), *cert. denied*, 493 U.S. 1070 (1990). *See, e.g., In Re One 1985 Nissan*, 889 F.2d at 1320; *United States v. One 1965 Cessna 320C Twin Engine Airplane*, 715 F. Supp. 808, 811 (E.D. Ky. 1989); *United States v. 1314 Whiterock*, 571 F. Supp. 723, 725 (W.D. Tex. 1983) *Cf. 6960 Miraflores Ave.*, 731 F. Supp. at 1567-69.

[7] Although the criteria governing mitigation are somewhat more general (*e.g.*, "to avoid extreme hardship"). 28 C.F.R. § 9.5(c), nothing in any relevant statute or in the regulations expressly refers to state and local tax claims.

because the asserted state tax liens did not exist until after the event giving rise to federal forfeiture. Similarly, the court in *United States v. $5,644,540 in United States Currency*, 799 F.2d 1357, 1364 (9th Cir. 1986), upheld forfeiture of property against the claims of California tax authorities who were unaware of the property's existence until after the date of the offense leading to forfeiture.[8]

We conclude that the federal government's immunity from state and local taxes precludes payment of such taxes that arise after the date of an offense that gives rise to forfeiture. We have identified no authority that permits the Department to pay tax claims arising after that date.

JOHN C. HARRISON
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[8] *See also United States v. Trotter*, 912 F.2d 964, 966 n.2 (8th Cir. 1990) ("Since title vests 'in the United States,' other creditors, including state agencies, may not claim any part of the funds if the government successfully obtains forfeiture."). It should also be noted that, because tax immunity runs to the benefit of the states as against the United States, some federal courts have invalidated federal tax liens arising after the date of an offense leading to forfeiture to a state following the relation back doctrine. *Metropolitan Dade County v. United States*, 635 F.2d 512 (5th Cir. Unit B. Jan. 1981). *But see United States v. Wingfield*, 822 F.2d 1466, 1475 (10th Cir. 1987) ("[T]he doctrine of relation back under state law cannot be held to subvert the constitutional power to lay and collect taxes.").