Larry HOWELL, Appellant,

v.

**COMMONWEALTH of Kentucky, Appellee,**

and

**Commonwealth of Kentucky; Commonwealth's Attorney's Office for the Sixteenth Judicial Circuit; and Northern Kentucky Drug Strike Force, Appellants,**

v.

**Douglas M. Stephens, Judge, Kenton Circuit Court (Second Division); Department of Public Advocacy, Commonwealth of Kentucky; Larry E. Howell; and Finance and Administration Cabinet, Commonwealth of Kentucky, Appellees,**

No. 2002–SC–1064–MR,
2003–SC–0219–TG.

Supreme Court of Kentucky.

May 19, 2005.

Shelly R. Fears, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant Larry Howell (2002–SC–1064–MR).

Gregory D. Stumbo, Attorney General, David A. Smith, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for

Appellee Commonwealth of Kentucky (2002–SC–1064–MR).

Gregory D. Stumbo, Attorney General, David A. Smith, Kent T. Young, Assistant Attorneys General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellants Commonwealth of Kentucky; Commonwealth's Attorney's Office for the Sixteenth Judicial Circuit; and Northern Kentucky Drug Strike Force (2003–SC–0219–TG).

Douglas Stephens, pro se, Judge, Kenton Circuit Court, Covington, Counsel for Appellee Douglas M. Stephens, Judge, Kenton Circuit Court (Second Division) (2003–SC–0219–TG).

Larry D. Beale, Department of Public Advocacy, Frankfort, Dennis Stutsman, Lexington, Counsel for Appellee Department of Public Advocacy, Commonwealth of Kentucky (2003–SC–0219–TG).

Larry E. Howell, pro se, Luther Luckett Correctional Complex, La Grange, Counsel for Appellee Larry E. Howell (2003–SC–0219–TG).

M. Holliday Hopkins, Finance and Administration Cabinet, Frankfort, Counsel for Appelee Finance and Administration Cabinet, Commonwealth of Kentucky (2003–SC–0219–TG).

Opinion of the Court by Justice COOPER.

On October 30, 2002, a Kenton Circuit Court jury convicted Appellant, Larry Howell, of trafficking in a controlled substance in or near a school, KRS 218A. 1411, and of unlawful transaction with a minor in the second degree, KRS 530.065, both Class D felonies, and of being a persistent felony offender in the first degree (PFO I), KRS 532.080(3). By final judgment of November 13, 2002, Appellant was sentenced to twenty years imprisonment. On December 11, 2002, Appellant appealed to this court from that judgment as a matter of right, Ky. Const. § 110(2)(b), asserting reversible error due to: (1) prosecutorial misconduct during voir dire and opening statement; and (2) failure to dismiss the PFO I count when the Commonwealth failed to prove by competent evidence that Appellant was over the age of eighteen at the time of his commission of a prior offense essential to the charge.

■ Following the conviction, the Commonwealth moved the trial court, pursuant to KRS 218A.410(1)(j), to order the forfeiture of $4,674.00 found in Appellant's possession during a search of his residence. On January 30, 2003, the trial court entered an order forfeiting and allocating the disbursement of that money. Appellant Howell asserts that the order of forfeiture violated his right to due process and his right to be free from excessive fines. However, he neither appealed from the order of forfeiture nor cross-appealed from the Commonwealth's appeal from that order; thus, we are without jurisdiction to address whether the forfeiture, itself, was improper. *United Bonding Ins. Co. v. Commonwealth,* 461 S.W.2d 535, 536 (Ky. 1970). We note that other courts have held in very similar circumstances that the failure to file a notice of appeal from a post-conviction forfeiture order is fatal. *United States v. Casas,* 999 F.2d 1225, 1230–32 (8th Cir.1993) (where forfeiture was ordered after sentence was imposed, and defendants only appealed from the imposition of the sentence, the court had no jurisdiction to consider challenges to the forfeiture orders); *United States v. Kopituk,* 690 F.2d 1289, 1343 (11th Cir. 1982) (where forfeiture was ordered in a RICO action, the defendants "were required to file a separate notice of appeal from the [post-conviction] forfeiture judgment"). Thus, we cannot consider Appellant's claims that the forfeiture order vio-

lated his rights under the Due Process and Excessive Fines Clauses.

■ The Commonwealth timely appealed to the Court of Appeals from the order of forfeiture insofar as it allocated portions of the forfeited funds to court costs, to the Department of Public Advocacy (D.P.A.) for attorney fees, and to the Finance and Administration Cabinet for reimbursement of expenses ordered for Appellant's defense, instead of allocating all of the forfeited funds to Northern Kentucky Drug Strike Force and the Commonwealth's attorney for the sixteenth judicial circuit. Inexplicably, the Northern Kentucky Drug Strike Force and the Commonwealth's attorney were named as additional appellants and the trial judge, the D.P.A., and the Finance and Administration Cabinet were named as additional appellees. Only parties of record in the underlying action have standing to appeal, *Bartholomew v. Paniello*, 287 S.W.2d 616, 617 (Ky.1956), and an appeal may only be taken against parties of record in the underlying action. *White v. England*, 348 S.W.2d 936, 937 (Ky.1961). However, the Commonwealth has standing to contest the allocation of the forfeited money since it was the party that requested the forfeiture. We granted transfer from the Court of Appeals and consolidated the Commonwealth's appeal with Appellant Howell's appeal. We now affirm Appellant's convictions but reverse and remand for a new penalty phase of his trial because improper evidence was used to prove that he was a PFO I. We also reverse the trial court's allocation of the forfeited money and remand for allocation pursuant to KRS 218A.435(12).

\* \* \* \* \* \*

After receiving complaints about Appellant's drug activity, Detective Robert Scroggins of the Northern Kentucky Drug Strike Force set up surveillance outside of Appellant's residence. The surveillance lasted approximately two months and produced only evidence that many people came and went from the house. Scroggins then conducted a "trash pull," in which he searched Appellant's garbage for evidence of drug use. Scroggins found evidence of marijuana use and thereafter obtained a search warrant to search Appellant's residence. The search led to the discovery of eight plastic bags of marijuana hidden in a cinder block wall on the side of Appellant's house. The police also seized $4,674.00 in cash, which they found in Appellant's wallet.

G.J., a 17–year–old male, testified that while riding in Appellant's truck to Covington, Appellant asked him if he was interested in purchasing marijuana. G.J. responded affirmatively and thereafter purchased a "dime bag"[1] of marijuana from Appellant. This occurred again on a separate occasion approximately one year after the first incident. These incidents were the bases for Appellant's convictions of unlawful transaction with a minor in the second degree and trafficking in a controlled substance in or near a school. G.J. further testified that on two other occasions, Appellant gave him an ounce of marijuana as a free sample.

## I. PROSECUTORIAL MISCONDUCT.

■ Appellant first contends he is entitled to reversal for a new trial because the prosecutor (1) persistently attempted to define the term "reasonable doubt" during voir dire and (2) engaged in improper argument during opening statement. When considering allegations of prosecutorial misconduct we must determine whether the misconduct was so egregious that it denied the accused his constitutional right

---

1. G.J testified that a "dime bag" is the street term for ten dollars worth of marijuana.

to due process of law. *Slaughter v. Commonwealth*, 744 S.W.2d 407, 411 (Ky.1987). "The required analysis ... must focus on the overall fairness of the trial, and not the culpability of the prosecutor." *Id.* at 411–12.

During voir dire, the prosecutor told the prospective jurors a story about a colleague of hers who had interviewed a juror in a previous case to discover why he had not returned a verdict of guilty in that case. The juror explained that he had "a doubt" about the crime. Thereafter, the prosecutor, over several objections, persisted in distinguishing between "a doubt" and the prosecution's burden of proving a case "beyond a reasonable doubt."

Kentucky law clearly prohibits courts or attorneys from attempting to define "reasonable doubt" at any stage in a trial. RCr 9.56(2); *Commonwealth v. Callahan*, 675 S.W.2d 391, 393 (Ky.1984) ("trial courts shall prohibit counsel from *any* definition of 'reasonable doubt' at any point in the trial"). The Commonwealth's assertion that *Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), abrogates this rule in any way is without merit. *Victor* merely held that the "beyond a reasonable doubt" standard was constitutionally required. *Id.* at 5, 114 S.Ct. at 1243. The Court stated that the United States Constitution does not require trial courts to define the term "reasonable doubt" nor does it prohibit them from doing so. *Id.* Kentucky law, on the other hand, specifically prohibits such conduct.

 It is doubtful that the prosecutor's conduct here rose to the level of a violation of *Callahan*. *Compare Simpson v. Commonwealth*, 759 S.W.2d 224, 226 (Ky.1988) ("In all of those cases [where this Court found an impermissible attempt to define 'reasonable doubt'], some attempt was made to use other words to

convey to the jury the meaning of 'beyond a reasonable doubt.' In this case, there was no such effort.") But even if a violation occurred, the trial court sustained defense counsel's objections and admonished the jury that the standard was "reasonable doubt." Appellant never moved for a mistrial. A party is under a duty to make "known to the court the action [he] desires the court to take ...." RCr 9.22; *Jenkins v. Commonwealth*, 477 S.W.2d 795, 797–98 (Ky.1972). "[F]ailure to move for a mistrial following an objection and an admonition from the court indicates that satisfactory relief was granted." *West v. Commonwealth*, 780 S.W.2d 600, 602 (Ky.1989).

 Appellant also asserts that the prosecutor engaged in inappropriate argument during the Commonwealth's opening statement. Rather than stating what the evidence would show, she referred to Appellant as "that man" who "fed on these children's weaknesses" and "took something away from these children." While the foregoing statements are, indeed, more in the form of argument than a statement of the evidence, the trial court sustained defense counsel's objections and admonished the prosecutor that "this is opening statement." No further relief was requested; thus, we assume the relief granted was satisfactory. *West*, 780 S.W.2d at 602.

## II. PENALTY PHASE EVIDENCE.

 During the penalty phase of the trial, the Commonwealth attempted to prove that Appellant was a persistent felony offender in the first degree (PFO I). The PFO I statute requires the Commonwealth to prove, *inter alia*, that the offender has committed two previous felonies and was eighteen years of age or older at the time he committed both prior offenses. KRS 532.080(3). The failure to prove the

age of the defendant at the time the previous offenses were committed is fatal. *Tyler v. Commonwealth,* 805 S.W.2d 126, 128 (Ky.1991).

■ Christy Feldman of the Department of Corrections was the witness who attempted to prove Appellant's status as a PFO I. She testified from Department of Corrections' records that Appellant's date of birth was March 7, 1961, and from the certified records of the Campbell Circuit Court, indictment number 80–CR–166, that he was convicted of burglary in the third degree, a Class D felony, on March 19, 1981. However, the Campbell Circuit Court records did not include a copy of the indictment or any other information identifying the date of the offense. Over Appellant's objection, Feldman testified that a document "in her file" (not further identified, presumably Department of Corrections' records), stated that the offense occurred on November 11, 1980. She then testified that the certified records of the Kenton Circuit Court, indictment number 84–CR–150, showed that Appellant was convicted on January 28, 1985, of burglary in the second degree, a Class D felony, and that the date of the offense listed in the indictment was January 11, 1984, at which time Appellant was *prima facie* over the age of eighteen. Appellant's motion to dismiss the persistent felony offender indictment for insufficiency of the evidence was overruled.

In *Montgomery v. Commonwealth,* 819 S.W.2d 713 (Ky.1991), the Commonwealth attempted to prove the defendant's status as a PFO through the testimony of a Kentucky State Penitentiary records office supervisor, who testified directly from the Bureau (now Department) of Corrections' resident record cards. *Montgomery* held that such evidence was insufficient because:

[T]he Bureau of Corrections has no direct or official responsibility in recording or compiling data regarding the underlying conviction, and there is no circumstantial guarantee of trustworthiness accompanying the transmittal and recording of such information at the Bureau of Corrections. On the contrary, the court clerk's file is the official repository of such data.

*Id.* at 719. Thus, while the Commonwealth could prove Appellant's date of birth by extrinsic evidence, *id.; Hayes v. Commonwealth,* 698 S.W.2d 827, 831 (Ky. 1985), it could not prove the date of the commission of the first offense by an unidentified document contained in the Department of Corrections' file.

We held in *Martin v. Commonwealth,* 13 S.W.3d 232 (Ky.1999), that direct proof of a particular PFO element was not required if there was evidence from which a jury could reasonably infer the existence of that element, *e.g.,* that the defendant completed service of the sentence imposed on any of the previous felony convictions within five years prior to the date of the commission of the felony for which he now stands convicted. *Id.* at 235. However, there is no competent evidence in this case creating an inference that Appellant was at least eighteen years of age when he committed the offense of which he was convicted on March 19, 1981. All we know is that the Campbell Circuit Court file bears a 1980 indictment number (and no explanation was given as to the significance of that fact). Appellant turned eighteen on March 7, 1979; thus, the offense could well have been committed while he was still a juvenile. *Hayes,* 698 S.W.2d at 831.

■ The Commonwealth asserts that Appellant should be barred from raising this issue by the doctrine of collateral estoppel. After the second conviction in 1985, Appellant's sentence was also sub-

jected to PFO I enhancement. The Commonwealth presumes that the 1981 conviction was used in that enhancement and, thus, that Appellant is estopped to now claim that conviction is not available for enhancement. *Howard v. Commonwealth,* 777 S.W.2d 888, 889 (1989). However, Feldman *did not* testify that the 1981 conviction was used to enhance the 1985 conviction and *did* testify that Appellant had additional prior convictions other than the two relied upon for PFO I enhancement in this case. The certified copy of the Kenton Circuit Court record was not filed as an exhibit and is not in this record. Because of the uncertainty as to which convictions were used to enhance Appellant's 1985 conviction, the doctrine of collateral estoppel does not bar Appellant from challenging the use of his 1981 conviction now.

We therefore reverse and remand for a new penalty phase trial, requiring only that upon retrial the Commonwealth sustain the persistent felony offender charges by competent evidence, which includes reasonable inferences therefrom. *Martin,* 13 S.W.3d at 235; *Montgomery,* 819 S.W.2d at 719–20; *cf. Osborne v. Commonwealth,* 43 S.W.3d 234, 245 (Ky.2001) (reversal on grounds of inadmissible evidence does not equate with reversal on grounds of insufficient evidence).

### III. ALLOCATION OF FORFEITED FUNDS.

■ The Circuit Court ordered that, from the $4,674.00 in funds seized from the Appellant, the statutory court costs first be paid, then $1,500.00 be paid to the D.P.A. as reimbursement for Appellant's defense, and then $1,500.00 be paid to the Finance and Administration Cabinet as reimbursement for expenditures ordered for Appellant's defense. The Court then ordered the remainder of the funds to be paid pursuant to KRS 218A.410.

The Commonwealth asserts that this allocation was erroneous, arguing that KRS 218A.435(12) provides for the distribution of *all* of the money forfeited in this case:

Other provisions of the law notwithstanding, the first fifty thousand dollars ($50,000) of forfeited coin or currency ... shall not be paid into the [asset forfeiture trust] fund but ninety percent (90%) shall be paid to the law enforcement agency or agencies which seized the property to be used for direct law enforcement purposes and ten percent (10%) to the office of the Commonwealth's attorney or county attorney who has participated in the forfeiture proceeding.

(Emphasis added.) Because one hundred percent of the entire $4,674.00 is earmarked by KRS 218A.435(12), the Commonwealth argues that there is no basis for appropriating any amount of the forfeited money to any agency other than those specified by that statute. We agree.

In disbursing the funds in the manner that it did, the Circuit Court relied on KRS 31.211(1), which provides:

At arraignment, the court shall conduct a nonadversarial hearing to determine whether a person who has requested a public defender is able to pay a partial fee for legal representation, the other necessary services and facilities of representation, and court costs. . . . This partial fee determination shall be made at each stage of the proceedings.

In essence, the court attempted to effectuate a partial fee reimbursement. The D.P.A. argues that the court first made a determination that Appellant Howell had the ability to pay for his legal representation pursuant to KRS 31.211. The court then allotted monies belonging to Howell first to pay for his legal representation and expenses, then to the Commonwealth pursuant KRS 218A.410(1)(j). This argument,

however, is premised upon the flawed assumption that illegal drug proceeds are a defendant's property. To the contrary, title to all property forfeited under KRS 218A.410 vests in the Commonwealth at the time of the illegal act. As such, KRS 31.211(1) could not apply.

This concept is known as the "relation-back" doctrine. The seminal case regarding the relation-back doctrine with respect to forfeitures is *United States v. Stowell*, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890), in which the United States Supreme Court addressed when the government's rights would vest under the federal forfeiture statutes then in effect. The Court held that such rights vest on the date of the illegal activity:

> [T]he forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed; *and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith.*

*Id.* at 17, 10 S.Ct. at 247 (emphasis added).

This common-law doctrine has been codified in Kentucky. KRS 218A.410(2) provides:

> Title to all property, including all interests in the property, forfeit under this section vests in the Commonwealth on the commission of the act or omission giving rise to forfeiture ... together with the proceeds of the property....

The statute protects only "subsequent bona fide purchaser[s] for value without actual or constructive notice of the act or omission giving rise to the forfeiture." *Id.* As such, other creditors, including state agencies, may not claim any part of the funds if the government successfully obtains forfeiture. *See United States v. Trotter*, 912 F.2d 964, 966 (8th Cir.1990) (criminal fine assessed by the court could not be paid with assets already involved in

a civil forfeiture proceeding); *Eggleston v. Colorado* 873 F.2d 242, 248 (10th Cir.1989) (sales tax liens could not be paid with forfeiture· funds); *State v. Freeman*, 814 P.2d 147, 153 (Okla.1991) (criminal fine and court costs could not be paid with proceeds from civil forfeiture action).

The Circuit Court expressly found that the $4,674.00 seized from Appellant Howell's home was the product of his illegal drug activity and was therefore subject to forfeiture pursuant to KRS 218A.410(1)(j). As such, the circuit court then had a duty to order forfeiture of all the proceeds. The fact that KRS 218A.410(1) uses the language, "subject to forfeiture," does not imply that an order of forfeiture is discretionary. *Compare United States v. Currency Totalling $48,318.08*, 609 F.2d 210, 213 (5th Cir.1980) (doctrine of relation back did not apply where the statute was found to provide for only a possibility of subsequent forfeiture). First, the opening sentence of KRS 218.410(2) dictates that a defendant's rights in property "subject to forfeiture" are divested immediately upon the illegal act or omission, and not at some future time. Second, the use of the term "shall" in both subsections (2) and (3) of KRS 218A.410 indicates that the legislature intended the statute to be mandatory. KRS 446.010(29). Subsection (2) states, "Any property or proceeds subsequently transferred to any person shall be subject to forfeiture and thereafter *shall be ordered forfeited*" (emphasis added), and subsection (3) states, "If any of the property described in this section cannot be located ... the court *shall order the forfeiture* of any other property of the defendant up to the value of any property subject to forfeiture under this section." (Emphasis added.) The language "subject to forfeiture" is used in this statute merely to give notice of the scope of property that shall

be forfeited. *See Eggleston*, 873 F.2d at 246.

Because the trial court was required to order forfeit all property that it found "subject to forfeiture" under KRS 218A.410(1), and because the Commonwealth, not Appellant Howell, had title to the forfeited currency at all relevant times, the court had no option to use any part of that currency to reimburse the costs of Appellant's defense.

Accordingly, we affirm Appellant's convictions but reverse and remand this case to the Kenton Circuit Court for a new penalty phase trial, and with direction to distribute the forfeited funds of $4,674.00 in accordance with KRS 218A.435(12).

All concur.